STATE of Missouri,
Plaintiff/Respondent,

v.

Michael Lee THOMPSON,
Defendant/Appellant.

No. WD 36432.

Missouri Court of Appeals,
Western District.

Sept. 10, 1985.

Sean D. O'Brien, Public Defender, David S. Durbin, Asst. Public Defender, Kansas City, for defendant/appellant.

William L. Webster, Atty. Gen., Mary Elise Burnett, Asst. Atty. Gen., Jefferson City, for plaintiff/respondent.

Before DIXON, P.J., and SOMERVILLE and NUGENT, JJ.

NUGENT, Judge.

The defendant, Michael Thompson, appeals his conviction for robbery in the second degree. He complains of errors in cross-examination and of the trial court's failure to quash the jury panel on the basis of the prosecution's misuse of its peremptory strikes of all black persons from the venire. We affirm his conviction.

At midday on December 28, 1983, James Leake and his band members were at the Stage Door Lounge loading their equipment into several cars when defendant Thompson approached the band and asked them where they had been playing. He then suggested that he might be able to procure a job for the band to play at Baby Doe's on New Year's Eve. The band agreed to drive to Baby Doe's with him. The defendant rode with James Leake.

When they arrived at the establishment, the defendant asked the band to wait while he talked to the management. He then went into a back room for about thirty minutes. When the defendant reappeared, he told the band that the management was considering whether to give them an audition. He asked Mr. Leake if he would drive him to pick up his wife. Leake agreed and they left Baby Doe's in Mr. Leake's car.

At trial, James Leake's testimony about the events up to that time was similar to the defendant's, but they gave conflicting accounts about what happened after they left.

James Leake testified that when they set out to pick up defendant's wife he did not know their destination, that the defendant directed him. Mr. Thompson told him to stop the car in a residential neighborhood at Twentieth and Bellview. When he stopped, defendant wrestled the car keys away from him, punched him twice in the head, threatened to shoot him, and pushed him out of the car. When Leake attempted to regain possession of his car keys, defendant got out of the car, hit him again,

pushed him down, kicked him, and threatened to shoot him if he moved. Then defendant drove away. Mr. Leake then found a telephone and called the police.

When the police arrived, Mr. Leake reported what had happened. The police told him that his car and the defendant had been found and took him to his car. He then drove to the police station, filed a report and viewed a line-up in which he correctly identified defendant Thompson.

Upon direct examination, defendant Thompson first testified that he had been convicted of burglary and stealing in 1977 and that he had been in jail for twelve months and then on probation for that offense. He testified to the events that led up to his arrival at Baby Doe's and about what happened there, but he gave a completely different account of what happened after they left Baby Doe's.

The defendant said that shortly after he and Leake left they stopped and bought some beer. He related that Leake then asked him if he smoked "joints." He replied that he did, and then he and Mr. Leake smoked a marijuana cigarette. Mr. Leake then asked if they could stop to buy a ten dollar bag of marijuana. The defendant told Leake that he knew of some Jamaicans who would sell them some marijuana. They drove to the Jamaicans' house at Twentieth and Bellview.

According to the defendant, Mr. Leake purchased a ten dollar bag of marijuana from the Jamaicans and then asked if he could buy a larger quantity. The Jamaicans gave them a beer and finally agreed to sell Leake a larger quantity but said that he would have to wait thirty minutes for the marijuana to be weighed. The defendant then reminded Mr. Leake that he had to pick up his wife and asked Leake if he would trust the defendant to borrow the car and come right back. He testified that Leake agreed to lend him the car and willingly gave him the keys to the car. He left but was not able to take a direct route to pick up his wife because he could not pass through many of the snow-covered streets. Police officers stopped the defendant on twenty-seventh street. They searched him, arrested him, and took him into custody.

Upon cross-examination, the prosecutor asked the defendant how many felony convictions he had. The defendant replied, "One." The prosecutor asked, "Weren't you convicted of burglary and stealing?" The defendant became confused. He had broken into someone's house and stolen something. He was charged with and pled guilty to both burglary and stealing. He regarded that as one transaction. To clarify the matter the prosecutor asked, "Did you not plead guilty to or were you convicted of two separate counts?" The prosecutor then asked him what sentence was imposed and how long he was in prison.

At another point in the cross-examination, the prosecutor asked the defendant if he had an alcohol problem. He said that he did not. The prosecutor then asked him if he was an alcoholic. The court overruled defense counsel's objection. The defendant answered that he was not an alcoholic. The prosecutor then asked him whether he had told a bond investigator that he was an alcoholic. Again, the court overruled counsel's objection. The defendant replied that he did not. The prosecutor then rephrased his questions but repeatedly asked the defendant whether he had told the bond investigator that he was an alcoholic. The defendant consistently replied that he did not tell the investigator or did not remember telling the investigator that he was an alcoholic.

The prosecutor also asked the defendant who lived at the house that he and Mr. Leake entered at Twentieth and Bellview. The defendant said, "Some Jamaican guys." The prosecutor then asked him whether he had purchased drugs from those "Jamaican guys" before. The court overruled counsel's objection. The defendant replied that he had. The prosecutor also asked him whether the Jamaicans still lived in Kansas City and whether the defendant had seen or spoken to them after he was arrested for robbery.

When the jury was being selected, the prosecutor used his peremptory strikes so

that no black persons were left to serve on the jury. Defendant's counsel then made a motion to quash the jury panel. The court overruled the motion.

## I.

In his first point, the defendant claims that the trial court erred in refusing to quash the jury panel because the prosecutor used his peremptory challenges to strike all four black members of the venire. The defendant claims that the prosecutor's action denied him his right under the state and federal constitutions to be tried by an impartial jury selected from a fair cross-section of the community. Many of the cases cited by the defendant deal only with the selection of the venire and not with the prosecutor's use of peremptory challenges. Those cases state that the venire panel must be selected from a fair cross-section of the community. *Duren v. Missouri,* 439 U.S. 357, 359, 99 S.Ct. 664, 666, 58 L.Ed.2d 579 (1979); *Taylor v. Louisiana,* 419 U.S. 522, 528, 95 S.Ct. 692, 696, 42 L.Ed.2d 690 (1975).

■ Here defendant Thompson does not contend that the venire panel was not selected from a fair cross-section of the community; he alleges that the prosecutor denied him a fair trial by using peremptory challenges to remove all the black persons from the venire panel. *Swain v. Alabama,* 380 U.S. 202, 223–24, 85 S.Ct. 824, 837–38, 13 L.Ed.2d 759 (1965), is particularly applicable to defendant's claim. There the court stated that it would presume that a prosecutor was acting properly when in a particular case its use of peremptory challenges causes the removal of all black persons from a particular jury. The Court added that this presumption may be overcome if the prosecutor in case after case, whatever the circumstances, whatever the crime and whoever the defendant or victim may be, has not seen fit to leave a single black on any jury in a criminal case. *Id.* In *State v. Baker,* 524 S.W.2d 122, 125 (Mo.1975) (en banc), the Missouri Supreme Court held that to rebut the presumption the defendant must allege and prove that "the exclusion of blacks is made in case after case, whatever the circumstances ... with the result that no Negroes ever serve on petit juries...." *Id.* at 125, citing *Swain. See also State v. Wilkerson,* 638 S.W.2d 308 (Mo.App.1982). In the case at bar, the defendant made no such allegation and offered no evidence on this point. Thus, he has failed to rebut the *Swain* presumption, and the trial court correctly denied defendant's motion to quash the jury panel.

## II.

In his second point, the defendant claims that the trial court erred in allowing the prosecutor to cross-examine him regarding the details of his prior convictions. We disagree.

■ Section 491.050 [1] provides that any witness in a civil or criminal case may be impeached by proof of any prior convictions, pleas of guilty, or findings of guilt. That section confers upon the state an absolute right to show the prior convictions of the defendant if he elects to testify in his own behalf. *State v. Giffin,* 640 S.W.2d 128, 132 (Mo.1982). Missouri courts hold that the prosecutor may elicit from a defendant the nature, dates and places of the occurrences and the punishments imposed. *State v. Woods,* 637 S.W.2d 113, 118 (Mo.App.1982); *State v. Lane,* 613 S.W.2d 669, 679 (Mo.App.1981). The prosecutor may not, however, delve into the details of such crimes so as to unduly emphasize them.

■ In the case at bar, the prosecutor elicited the fact that in 1977 the defendant had been convicted of the separate felonies of burglary and stealing. He was forced to rephrase his question several times because the defendant thought that he had been convicted of only one felony. The prosecutor then asked the defendant what sentence the court had imposed and how long the defendant had been in prison. In

---

1. Revised Statutes of Missouri, Cumulative Sup-    plement, 1984.

doing so, the prosecutor did not stray beyond the permissible scope of questions regarding prior convictions: he did not delve into the details so as to unduly emphasize them.

The defendant also contends that the trial court erred in permitting the prosecutor to question the defendant about prior drug transactions between the defendant and "the Jamaicans." He argues that misconduct not amounting to a conviction is inadmissible to impeach a defendant's testimony. We conclude that the trial court did not abuse its discretion when it overruled the defendant's objections to this line of cross-examination.

■ The case of *State v. Mitchell*, 491 S.W.2d 292, 295 (Mo.1973) (en banc), recognizes the general rule that evidence of prior misconduct not amounting to a conviction is inadmissible to impeach the defendant, but, if relevant, such evidence may be admitted for other purposes.

■ In this case, the subject of the Jamaicans and drug transactions was first raised by the defendant in his direct examination. He said that he took James Leake to the Jamaicans' house to buy marijuana and gave a detailed description of the drug transaction. He further testified that while he and Mr. Leake were in the Jamaicans' house, Leake gave him permission to borrow his car and willingly handed over his car keys. Section 546.260 [2] provides that any defendant in a criminal case may, at his option, testify in his own behalf *but that he shall be liable to cross-examination as to any matter referred to in his examination-in-chief.* Under that section, the defendant may be cross-examined about any subject matter within the scope of his direct examination. *State v. Harris,* 564 S.W.2d 561, 574 (Mo.App.1978). The permissible extent of such cross-examination is largely a matter within the trial court's discretion. *Id.*

■ Here, on cross-examination, the prosecutor established that the defendant knew the Jamaicans and had dealt with them on other occasions. They were the only persons who could corroborate his testimony, yet he made no attempt to contact them after his arrest. Such cross-examination touched on matters within the scope of defendant's direct testimony. Thus, the trial court properly overruled the defendant's objections.

■ Finally, defendant claims that the trial court erred in allowing the state to cross-examine him about his history of alcohol abuse. We agree that the court erred in permitting the prosecutor to persist in this line of questioning, but we cannot see how this error prejudiced the defendant. He consistently replied that he was not an alcoholic, and we find no case that states that merely referring to the defendant as an alcoholic is prejudicial error.

■ Upon cross-examination, the examiner is permitted to ask a witness whether he had been drinking or was intoxicated at the time of the events about which the witness has testified. Intoxication would affect his ability to perceive, remember, and accurately describe events. Such cross-examination would shed light on the credibility of his testimony and would not be a collateral issue. *State v. Caston,* 509 S.W.2d 39, 41 (Mo.1974).

In this case, however, the prosecutor did not ask whether the defendant had been drinking on the day in question. He asked whether the defendant was an alcoholic, which was irrelevant. The permissible question would be whether the defendant had been drinking on December 28, 1983. The prosecutor was not satisfied with asking the defendant only once whether he was an alcoholic. He persisted in asking the defendant this same question several times. This line of cross-examination was at least repetitious and argumentative and was altogether questionable. The trial court erred in overruling defense counsel's timely objections.

**2.** Revised Statutes of Missouri, 1978.

Even though this line of questioning was impermissible, the defendant gives no explanation of how it prejudiced his case. We find no case and the defendant cites none that holds a defendant to be prejudiced if he is shown to be or is accused of being an alcoholic in such circumstances as these. We hold that, in the light of all the evidence, he was not prejudiced.

For the foregoing reasons, we affirm the judgment.

All concur.