STATE of Missouri, Respondent,

v.

Eldon L. SHISLER, Appellant.

No. WD 39803.

Missouri Court of Appeals,
Western District.

June 7, 1988.

James R. Brown, Brown and Brown, Kearney, for appellant.

William L. Webster, Atty. Gen., Jefferson City, Philip M. Koppe, Asst. Atty. Gen., Kansas City, for respondent.

Before MANFORD, J.P., and
TURNAGE and COVINGTON, JJ.

COVINGTON, Judge.

Defendant, Eldon Lee Shisler, appeals his conviction by a jury of unlawful use of a concealed weapon, § 571.030.1(1), RSMo 1986, a class C felony for which he was sentenced to two years' imprisonment and fined one dollar. Affirmed.

On March 6, 1987, Elizabeth Nigro was working at Kentucky Fried Chicken, 3014 Independence Avenue, in Kansas City, Missouri. At approximately 1:00 a.m. she saw a car sitting near the drive-up window of the restaurant with its engine running and lights on. The driver was slumped over the wheel and appeared to be asleep. Ms. Nigro called the police.

Kansas City Police Officers Galand McGinness and John Fouchia arrived at the scene about 1:10 a.m. and attempted to wake the driver. The driver did not respond, so the officers removed him from the car and eventually roused him. They placed him under arrest for being in physical control of a vehicle while intoxicated. In court Officer Fouchia identified defendant as the driver of the car. Defendant was placed in the patrol wagon, and the officers conducted a standard inventory search of the vehicle. Officer Fouchia conducted most of the search. He found a .38 caliber pistol, concealed in a black vinyl carrying case, placed between the driver's seat and the console, where it would have been up against defendant's right leg as he sat in the driver's seat. The pistol was loaded with six live rounds. Also inside the pouch was a bottle containing several .38 caliber rounds. Officer Fouchia testified that the weapon was capable of being fired. Elsewhere in the vehicle, Officer Fouchia found a box of approximately 50 live rounds. Other items retrieved from the vehicle and admitted into evidence were: a brown wooden baseball bat, a hat containing a multicolored headband and a plastic mask with white hair on it, a memo book, and an envelope containing $68.40 in cash. A knife, approximately 9 inches in length when opened, was found on defendant's person, as was $311.00 in cash. There were empty beer cans in the car, and the odor of alcohol was noted by both officers.

Sandra Clark was called as a witness for defendant. She testified that she moved in with defendant the first day she met him at the Brother-in-Law's bar in February, 1987, and that she lived with him for about a month. Defendant was at that time manager of the bar, but lost his job there just a few days before his arrest. Ms. Clark admitted to being an alcoholic, and stated that she drank every day. She testified that she spent the evening of March 5, 1987, drinking at Brother-in-Law's with defendant. Both drank heavily and stayed until closing time. They left the bar some time after 1:00 a.m. on March 6th after arguing about who would drive. Ms. Clark testified that defendant was drunk enough that she refused to ride with him unless she were allowed to drive. Defendant finally relented and walked out of the bar first while Ms. Clark was still talking to the bartender. Ms. Clark testified that, as she left, the bartender called after her and asked her to take defendant's gun. She testified that she took the gun, which was in the pouch, and got into the car on the driver's side after defendant had leaned over and unlocked the door. She stated that she could not remember exactly where she put the gun as she got in. She further testified that she did not tell defendant that the gun was in the car, and that she was "almost positive" that he couldn't have known the gun was in the car. As they drove off, the two got into a minor argument, and Sandra eventually pulled off the road, got out of the car and walked away. At the time she left defendant, the car was not at Kentucky Fried Chicken.

Defendant's testimony was generally consistent with Sandra Clark's. Defendant stated that he had been the manager of Brother-in-Law's Bar since early in 1987, but, because of a dispute that arose over the owners' rehiring of personnel he had fired, defendant quit the job. He testified that the termination was a "mutual dissolution," that there was no real animosity, and that he continued to be a regular customer and a participant in pool tournaments at the bar. On the evening of March 5, 1987, he went to the bar with Sandra Clark. Both drank heavily. He still had a $50 tab at the bar which had been part of his compensation as manager. His description of events leading up to the point of Sandra Clark's departure from the car (after the argument) was consistent with hers. He stated that he did not notice her carrying anything when she got into the car, and that he remembered nothing from the time she left the car until he awakened in a holding cell early the next morning. Defendant stated that the gun found in the car was his, that he had purchased it from a friend for use as a "counter gun" when he worked at the bar, and that he kept it on a shelf behind the kitchen. He testified that he didn't even think about the gun

after he lost his job at the bar. Other portions of defendant's testimony will be set forth in connection with the discussion of the points on appeal.

In his first point, defendant alleges that the trial court erred in permitting the prosecutor to cross-examine defendant regarding two exhibits which the state failed to disclose in response to defendant's request for discovery under Rule 25.03 and in admitting the exhibits into evidence. The exhibits were two affidavits executed by defendant in the course of applying for liquor permits in which defendant falsely stated that he had never been arrested. Defendant contends that the trial court should have imposed sanctions under Rule 25.16 by excluding the exhibits and barring further cross-examination on them and that the trial court's failure to do so resulted in fundamental unfairness.

■ The state concedes that neither the documents nor the statements of defendant contained in them were disclosed to defendant in response to his request for discovery. The state argues, however, that because defense counsel made no objection at trial until after defendant had been shown one of the documents, had identified it, and had admitted lying about his previous arrests, no error was preserved for appeal and no fundamental unfairness could have resulted. Where evidence is received by surprise, however, untimeliness of defendant's objection will not preclude appellate review. *State v. Stapleton,* 539 S.W.2d 655, 659 (Mo.App.1976).

■ The imposition of sanctions for failure to comply with an appropriate discovery request is a matter which lies within the sound discretion of the trial court. *State v. Johnson,* 702 S.W.2d 65, 73 (Mo. banc 1985). Where no sanctions are imposed, the appellate court's task is to determine whether the state's discovery violation resulted in fundamental unfairness to the defendant or substantively affected the result of the trial. *Id.*

■ The primary factor to be considered in deciding whether the challenged evidence could have substantively altered the result of the trial is whether the evidence relates to a vital or critical element of the case. *See, e.g., State v. Perkins,* 710 S.W. 2d 889, 893 (Mo.App.1986) (statement of defendant directly contradicting his alibi defense); *State v. Scott,* 647 S.W.2d 601, 607 (Mo.App.1983) (state called undisclosed witnesses to prove "vital elements of the prosecution's case").

■ The critical evidence in the case was the testimony of the two police officers who conducted the search of defendant's vehicle. The officers testified that the weapon was found concealed in a black vinyl pouch between the driver's seat and the console of defendant's car, where it would have been directly adjacent to defendant's right leg as he sat in the driver's seat. The officers testified that two separate containers of live ammunition were also found in the vehicle. In addition, Detective Christopher Atwood testified that defendant, when asked about the gun approximately three and a half hours after his arrest, admitted that he kept it in a pouch in his car.

Defendant's evidence consisted of Sandra Clark's testimony that she put the gun in the car without defendant's knowledge and defendant's testimony that he did not know the gun was in the car. Defendant's credibility was at issue. Proof that defendant had lied about his previous arrests was not the only evidence produced by the state which cast doubt on defendant's credibility. Defendant was impeached by proof of a prior conviction for possession and sale of a non-narcotic drug. He was further impeached by the state's elicitation of his admission that until the day before trial he had concealed this prior conviction even from his defense counsel, admitting the conviction only when confronted with his record and asked directly by his attorney about the conviction. The state's evidence also established a prior inconsistent statement by defendant regarding the Halloween mask found in his car. Detective Atwood testified that defendant told him, just hours after his arrest, that the mask had been in the car since Halloween. At trial, defendant testified that the mask was put

in the car the day before his arrest when he took it to play with Sandra Clark's children. Defendant claimed he did not recall making the statement to Detective Atwood.

Considering the challenged evidence in the context of the entire record, the trial court's failure to impose sanctions for the state's violation of Rule 25.03 did not substantively affect the outcome of the trial. The challenged evidence tended to undermine defendant's credibility. Defendant's credibility was impeached by other evidence which was competent. Even if the affidavits and all references to the false statements had been excluded, the result of the trial would remain unchanged. Neither the admission of the exhibits into evidence nor the state's cross-examination of defendant regarding his false statements was fundamentally unfair.

Defendant next contends that the trial court abused its discretion when it allowed the state to persist in cross-examination of defendant regarding specific details of defendant's prior convictions and arrests.

 Where a defendant elects to testify in his own behalf, the state has an absolute right to show the prior convictions of the defendant for purposes of impeachment. § 491.050, RSMo 1986; *State v. Giffin,* 640 S.W.2d 128, 132 (Mo.1982); *State v. Thompson,* 697 S.W.2d 575, 578 (Mo. App.1985). The statute provides that proof of prior convictions may be either by the record or by cross-examination, that the witness must answer any question relevant to that inquiry, and that the cross-examiner "shall not be concluded by his answer." A prosecutor is permitted further to examine a defendant who initially fails to disclose all prior convictions. *State v. Taylor,* 589 S.W.2d 302, 304 (Mo. banc 1979). So long as the questioning is designed to elicit an answer regarding the fact of an additional conviction, repetition or rephrasing of a question is not improper. *State v. Thompson,* 697 S.W.2d at 578–79; *State v. Williams,* 532 S.W.2d 826, 828–29 (Mo.App. 1975).

On direct examination, defendant's counsel elicited from defendant the fact that defendant had previously been convicted of a crime; the defendant admitted to a conviction for sale of a non-narcotic drug.

On cross-examination, the defendant volunteered that his lawyer in 1971 had told him that, once he was released from the "diagnostic center," the conviction would not be on his record. Defendant further volunteered that, when filling out job applications, he customarily reported that he had no record. The prosecutor then elicited from defendant his history of making false statements regarding his arrest record. The prosecutor further inquired as to whether the drug conviction was defendant's only state court conviction. The defendant hesitantly answered that "There was an allegation about misuse of credit cards," but that he did not recall the outcome. The prosecutor asked defendant whether he had been convicted and sentenced to concurrent time with the other conviction. Defendant avoided answering the question and again stated that he had been told that the drug conviction would be erased from his record. The prosecutor asked a third time about the outcome of the credit card allegation:

Q Okay. Now let's get back to the fraudulent use of a credit device.

A Okay.

Q Using somebody else's credit card. What happened on that?

A They gave me the permission to use it and then found out it wasn't his.

Q You said there was an allegation.

A Right.

Q I'm asking you about the outcome of that allegation?

A I don't recall it because it was all in this same case—I don't recall what the lawyers had to break it down.

 Although defendant apparently understood the prosecutor to be asking for a further explanation of the circumstances which gave rise to the credit card charge when he asked, "What happened on that?", the context in which the question was asked reflects that the question was intended to elicit from the defendant an answer regarding whether he had, in fact, been convicted on the charge. Although it is

true that the state may not delve into details of prior offenses so as unduly to emphasize them, *State v. Thompson*, 697 S.W. 2d at 578, the question in the present case sought only to elicit the nature of the occurrence, the fact of a conviction and the punishment imposed. Notably, other than to make one hearsay objection, defendant raised no objection to these questions at trial. The trial court did not abuse its discretion.

Defendant complains additionally of the prosecutor's repeated references to defendant's incarceration in the penitentiary. While defendant may have preferred the term "diagnostic center," he admitted having been sent to "the diagnostic center of the penitentiary." As the issue was never presented to the trial court, it does not warrant further consideration on appeal. Rule 29.11(d).

In his third point, defendant alleges that the introduction into evidence of a knife, a baseball bat, a memo book and a Halloween mask constitutes plain error. He alleges that the state's purpose in introducing the evidence was to insinuate to the jury that defendant had planned to rob the Kentucky Fried Chicken restaurant where he was arrested. He argues that the evidence was irrelevant and inflammatory, and that its introduction, along with insinuations made by the prosecutor in closing argument, resulted in a miscarriage of justice affecting his substantial rights. Defendant seeks review under Rule 30.20 because he failed to object to the evidence at trial or to preserve the issue by a specific assignment of error in his motion for new trial.

Significantly, defendant's counsel did not merely fail to object to the evidence at trial; as each item was offered, he affirmatively stated he had "no objection." On similar circumstances, this court has declined to consider evidentiary error so waived at trial under the plain error standard. *State v. Ealey*, 727 S.W.2d 165, 167 (Mo.App.1987).

█ A gratuitous review of the question, however, reveals that defendant has not met his burden of proving a miscarriage of justice affecting his substantial rights. The basis for defendant's claim of plain error is that the evidence was not relevant to the issue of defendant's knowing concealment of the gun and that it should have been excluded because of its tendency "to draw the attention of the jury away from the issue it was called upon to resolve," citing *State v. Robinson*, 588 S.W.2d 247 (Mo.App.1979). The *Robinson* court's conclusion that admission of certain testimony was reversible error was based upon four findings: 1) the testimony was clearly inadmissible as hearsay, 2) it had no tendency to prove any issue in the case, 3) it could have been a decisive factor in the jury's decision, and 4) the testimony had no "saving qualities."

█ Defendant's reliance on *Robinson* is misplaced. In the present case, to any extent that the evidence might have suggested a plan to rob the Kentucky Fried Chicken restaurant, the evidence tended also to establish that defendant was knowingly carrying a gun, the crime with which he was charged, with that plan in mind. Additionally, even had defendant objected to the introduction of the evidence on the ground that it constituted evidence of an uncharged offense, evidence of an uncharged crime is relevant and admissible to establish defendant's guilt of the crime charged when it tends to establish a common scheme or plan embracing two or more crimes so related that proof of one tends to establish the other. *State v. Kenley*, 693 S.W.2d 79, 81–82 (Mo. banc 1985); *State v. Weatherspoon*, 728 S.W.2d 267, 272 (Mo.App.1987). Defendant has not met his burden of showing a miscarriage of justice affecting his substantial rights.

The conviction is affirmed.

All concur.