**STATE of Missouri, Respondent,**

v.

**Joseph A. EK, Jr., Appellant.**

**WD 44770.**

Missouri Court of Appeals, Western District.

July 14, 1992.

Motion for Rehearing and/or Transfer to Supreme Court Denied Sept. 1, 1992.

694, 697 (Mo.App.1988). Defendant does not allege plain error, and we find none. Rule 30.20.

Homer D. Wampler, II, Springfield, for appellant.

William L. Webster, Atty. Gen., Joseph P. Murray, Asst. Atty. Gen., Jefferson City, for respondent.

Before HANNA, P.J., and FENNER and ULRICH, JJ.

HANNA, Presiding Judge.

The defendant, Joseph A. Ek, Jr., was found guilty by a jury of sexual abuse in the first degree pursuant to § 566.100 RSMo 1986 [1] and was sentenced to the Missouri Department of Corrections for five years and fined $500.00. He raises three points on appeal. The defendant claims error because the court admitted two photographs of his stepdaughter (T.K.) arguing they depicted events too remote in time to have probative value and they should have been excluded because they were evidence of other crimes. Defendant further claims the state failed to prove the element of sexual contact required by § 566.100.-1(2), and the state failed to produce the defendant's telephone records pursuant to his written request for disclosure.

Defendant was charged with forcible rape and sexual abuse in the first degree. He was acquitted of the rape charge. A third count of abuse of a child was dismissed before trial.

The defendant began living with the victim (J.B.), her brother (T.B.) and their mother in October of 1982. J.B. was eight years old at that time. It was the state's testimony that in the early winter months of 1983, when she was nine years of age, the defendant began to pat J.B. on the behind and touch her breasts. The defendant told the victim it was their little secret and she should not tell anyone. This conduct continued for about two weeks. One night the defendant took her to his bedroom and had sexual intercourse with her. Afterwards he forced her to perform oral sex on him. The defendant subjected the victim to sexual intercourse over the course of the next two or three years. During this time the defendant took various photographs of J.B. in the nude and kept nude photographs in his house of both adult females and young girls.

When J.B. was in the sixth grade, she told her mother the defendant was touching her in places she did not want to be touched. When confronted with this accu-

sation the defendant broke down, crying; "Well, I don't know why I have to have this problem when everybody else is normal." The victim's mother eventually made the defendant leave the house.

The fact which gave rise to the sexual abuse charge was a specific incident witnessed by Kay Creason in November 1984. Ms. Creason went to the defendant's home on an errand, and as she stepped onto the porch, she observed through a window in the door the defendant lying on a couch fully clothed, with J.B. naked, straddling the defendant over his crotch area. The defendant had his hands on the victim's buttocks. Ms. Creason knew both the defendant and the victim. When she knocked on the door J.B. jumped up and ran out of the room. The defendant straightened himself up and went to the door.

In his first point, the defendant charges the court erred by allowing two photographs in evidence of the defendant's stepdaughter (not the victim) which depicted her in the nude. The defendant objected to these exhibits claiming they were too remote in time to be probative and that they were evidence of other crimes and did not fall within any of the exceptions.

Before the photographs were offered in evidence, J.B. testified that the defendant not only took pictures of her in the nude, but had in his possession nude photographs of other females. The following testimony, on direct examination by the state, was given by J.B. without any objection from defense counsel:

Q: Did you ever see any of these pictures that he [the defendant] took of you?

A: I didn't actually see the ones he took of me. I saw several of other people.

Q: Were these pictures of old girls or young girls, or do you remember?

A: There were some pictures of middle-aged women, about 25, 30. And there were some pictures of little girls.

1. All statutory references are to the Revised Statutes of Missouri 1986, unless otherwise indi-

cated.

On cross-examination J.B. again testified about nude pictures of other women. In addition to J.B.'s testimony, her brother, T.B., testified without objection that he had been at the defendant's residence during the years of 1982, 1983, 1984 or 1985, where he found pictures of nude little girls.

A careful review of the transcript shows no objection to the descriptive testimony by J.B. and T.B. about the defendant photographing young girls and older females in the nude, or to the photographs of the victim herself. Both witnesses viewed these photographs, located in a chest of drawers, where they were found by the sheriff.

■ When the photographs were received in evidence, they were cumulative evidence on the point of defendant's photographing his nude stepdaughter. It is not error to admit normally inadmissible evidence over objection when the evidence is cumulative. *State v. Richardson*, 102 S.W.2d 653, 656 (Mo.1937); *State v. Bailey*, 783 S.W.2d 490 (Mo.App.1990); *State v. Carey*, 599 S.W.2d 71 (Mo.App.1980); *State v. Umfleet*, 587 S.W.2d 612 (Mo.App.1979). *See also State v. Williams*, 566 S.W.2d 841 (Mo.App.1978).

■ In *Williams*, 566 S.W.2d at 843–44, the defendant objected to evidence obtained during a locker search, claiming it was in violation of his constitutional rights. The objection was overruled. On appeal, the court denied relief because the defendant had failed to object earlier to a picture of the contents of the locker seized in the illegal search.

To the same effect, the photographs in this case were merely duplicative of the oral testimony, which was received without objection. The defendant's objections to these photographs were waived by the witnesses' oral testimony of the same nature without objection. Defendant cannot complain of the admission of the photographs where evidence of the same tenor was received without objection. The point is denied.

■ The defendant's second point claims the state failed to prove all the elements of the crime because it failed to establish "sexual contact" within the meaning of § 566.010.1(3). We accept as true all evidence tending to prove the defendant's guilt and all reasonable inferences supporting the verdict. *State v. Dagley*, 793 S.W.2d 420, 423 (Mo.App.1990). All evidence to the contrary is disregarded. *Id.* at 423.

■ The state offered the testimony of Ms. Creason to prove the "sexual contact." The primary focus of defendant's argument is directed to Ms. Creason's credibility, but that is not an issue before this court. It is the jury's responsibility to evaluate a witness' credibility and the weight to be given to her testimony. As a general rule, the decision of the jury on this issue is not subject to review by this court. *State v. Williams*, 652 S.W.2d 102, 111 (Mo. banc 1983).

■ Sexual contact as defined in § 566.010(2) is "any touching of the genitals or anus of any person, or the breast of any female person, or any such touching through the clothing, for the purpose of arousing or gratifying sexual desire of any person." Ms. Creason testified that when she approached the home of the defendant in November of 1984, she observed the following:

Q: What did you observe through that door when you stepped up on the porch, Ms. Creason?

A: I saw Joe [Ek, the defendant] laying backward, kind of leaning back on a— in a lying position, and—on the couch, and [the victim] straddled him, nude.

Q: Was—She straddled him over his crotch area?

A: Yes, sir.

Q: Could you show the jury what he was doing with his hand when you looked through the door and saw what was going on?

A: He had his hands on her buttocks.

Q: Did you knock on the door?

A: I kind of—Well, when it happened, I was just kind of astonished, you know. I was just really shocked. And I knocked on the door and stepped back,

but as I knocked on the door, [J.B.] jumped up and ran into the room off to the side. And Joe got up and straightened himself and came to the door.

Defendant claims this testimony failed to show a touching, either directly or through the clothing, of either J.B.'s or defendant's genitals.

In *State v. Edwards*, 657 S.W.2d 343, 346 (Mo.App.1983) the evidence was sufficient to sustain the sexual contact where the defendant took off the victim's pants, placed her on the bed, and touched her bottom. Her mother testified the child had pointed to the area between her legs when asked where she had been touched. *See also State v. Eastin*, 735 S.W.2d 50, 53 (Mo.App.1987), where the prosecutor asked the victim to show the jury in a general area where the victim was touched and her response was, "[T]here and back here." The court found this was sufficient to support the charge.

The evidence in this case showed the victim was on top of the defendant, straddling him, and the evidence is such that their pelvic regions touched, albeit through their clothing, and that the defendant had his hands on the victim's buttocks. This evidence is more than sufficient to prove sexual contact within the meaning of the statute. *See State v. Seemiller*, 775 S.W.2d 273 (Mo.App.1989). The point is denied.

■ For his final point, the defendant argues the state failed to produce the defendant's telephone records after a proper request for them had been made. We first address a related matter not raised on appeal, but which is troublesome to us. Our concern is with the means used by the prosecutor's office to obtain these records. The prosecutor obtained the records by issuing a subpoena duces tecum pursuant to the provisions of Rule 26.02.[2] The prosecutor demanded production of the telephone company's records for a deposition without giving any notice to the defendant and

without any thought of taking the deposition of the telephone company's records keeper. The subpoena was headed: "Order To Appear/Produce Documents/Give Depositions." It listed attorneys for both sides with their addresses and phone numbers. It was addressed to a phone company employee and set forth the style of the criminal case. The subpoena directed the individual to bring the following:

"To the Hickory County Prosecuting Attorney's Office, Hermitage, Missouri:

All telephone bills, including long distance bills for Joseph A. Ek, Jr. Phone number (417) 852–4241 for August 1990 to present. *Please present same as soon as possible.*" [Emphasis added]

The subpoena duces tecum was signed by the court clerk and deputy clerk and displayed the court seal. It gave every appearance of a proper subpoena duces tecum except that it ordered the records to the prosecutor's office and the information of the place, time and date of the deposition was left blank. The subpoena itself proves it was not the purpose of the prosecutor to notify the other party or to take the witnesses' deposition.

■ This was an ex parte discovery request. The purpose of Rule 26.02 is to require the production of books, papers, documents or other objects for court trials or court hearings. *State v. Engberg*, 377 S.W.2d 282, 286 (Mo.1964) and *State ex rel Phelps v. McQueen*, 296 S.W.2d 85, 89 (Mo. banc 1956). Rule 26.02 does not contemplate an ex parte proceeding. The procedure used here was improper. It was a misuse of the process that could have unfavorable consequences for the individual attempting to obtain discovery in this manner, and could possibly have an adverse affect on the case result.

■ Addressing the merits, the defendant charges the court erred in failing to grant a mistrial because the state failed to reveal its possession of the telephone records after he made a proper request.

---

**2.** The prosecutor may or may not have been entitled to the telephone records without a subpoena duces tecum. We are not concerned with whether the records, absent a court order,

should have been made available, only the method in which the subpoena duces tecum was employed.

There is, among other things, no showing of any prejudice. The matter arose on cross-examination of defendant when he was asked the time sequence of his phone call to his ex-wife in West Virginia in relation to the time the sheriff left his house with the photographs. The defendant indicated the call may have been a couple of days later, but possibly it was that night; he didn't know for sure. Whether the call was made to his ex-wife that night, he testified:

> Q: So if that's what your phone records indicate, you wouldn't argue with that?
>
> A: No, I wouldn't, sir.

▆ The phone records were not introduced into evidence. The only remedy sought was a mistrial. The trial court refused the defendant's motion. Whether the court should have granted a mistrial for the state's refusal to provide appropriate discovery is a matter that lies within the trial court's sound discretion. *State v. Johnson*, 702 S.W.2d 65, 73 (Mo. banc 1985).

▆ Appellate review of the trial court's discretion focuses on whether the non-disclosed evidence related to a critical or vital element of the case which could have substantially altered the trial's result or resulted in fundamental unfairness to the defendant. *Id.* at 73 and *State v. Shisler*, 752 S.W.2d 447, 450–451 (Mo.App. 1988). If the answer in either situation is in the affirmative, the appellate court will find an abuse of discretion. *Johnson*, 702 S.W.2d at 73.

In *Shisler*, 752 S.W.2d at 447, the defendant was cross-examined regarding two affidavits executed by him in the course of applying for liquor permits in which he falsely stated he had never been arrested. The defendant claimed the exhibit should have been excluded and the prosecution barred from further cross-examination on the affidavits. The state admitted that neither the documents nor the statements of the defendant contained in the affidavits were disclosed in response to his request for discovery. The defendant was convicted of unlawful use of a concealed weapon and the defense was he did not know the weapon was in his automobile. The evidence in the affidavits challenged defendant's credibility. The court decided that even if the affidavits and all reference to the false statements had been excluded, the result of the trial would have remained unchanged. *Id.* 752 S.W.2d at 451.

It is questionable whether the challenged evidence successfully attacked the defendant's credibility. Nevertheless, whether the defendant called his ex-wife long distance the evening of the sheriff's search of his house, or a few days later, was not vital or a critical element of the case, where the primary issue was whether the incident of sexual assault ever occurred. The prosecutor's reference to and use of the telephone records on cross-examination of the defendant was not fundamentally unfair to the defendant and it cannot be said that the non-disclosed evidence substantially affected the result of the trial. The point is denied.

The judgment of the trial court is affirmed.

All concur.