STATE of Missouri, Respondent,

v.

Gary SKELTON, Appellant.

Gary SKELTON, Appellant,

v.

STATE of Missouri, Respondent.

Nos. 18671, 19213.

Missouri Court of Appeals,
Southern District,
Division Two.

Oct. 17, 1994.

Motion for Rehearing and Transfer to
Supreme Court Denied Nov. 7, 1994.

**700**

Rebecca L. Kurz, Asst. Appellate Defender, Kansas City, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Cheryl A. Caponegro, Asst. Atty. Gen., Jefferson City, for respondent.

CROW, Judge.

A jury found Appellant, Gary Skelton, guilty of robbery in the first degree. § 569.020, RSMo 1986. The trial court, having found Appellant a prior offender, § 558.016.2, RSMo Cum.Supp.1992, a persistent offender, § 558.016.3, RSMo Cum.Supp. 1992, and a class X offender, § 558.019.4(3), RSMo Cum.Supp.1992,[1] sentenced him to twenty years' imprisonment. Appellant brings appeal 18671 from that judgment and sentence.

After delivery to the Department of Corrections, Appellant attacked the conviction in an action per Rule 29.15.[2] Following an evidentiary hearing, the motion court entered judgment denying relief. Appellant brings appeal 19213 from that judgment.

We consolidated the appeals, Rule 29.15(*l*), but address them separately in this opinion.

### Appeal 18671

Two of Appellant's three points relied on pertain to this appeal. Appellant has numbered them II and III. We begin with point III, which asserts the evidence was insufficient to support the verdict.

█ In adjudicating that issue we (a) view the evidence in the light most favorable to the State and grant the State all reasonable inferences from the evidence, (b) disregard contrary inferences unless they are such a natural and logical extension of the evidence that a reasonable juror would be unable to disregard them, and (c) consider whether a reasonable juror, viewing the evidence that way, could find each element of the crime beyond a reasonable doubt. *State v. Grim,* 854 S.W.2d 403, 411[5] (Mo. banc 1993), *cert denied,* —— U.S. ——, 114 S.Ct. 562, 126 L.Ed.2d 462 (1993).

So viewed, the evidence establishes that on the afternoon of December 3, 1991, David Pardue went to an apartment (from which he had recently moved) to pick up his $643 Social Security check. He found it in the mailbox.

Pardue then went to the apartment of Greg Killingsworth, a former neighbor, arriving about 3:30 p.m. There, Pardue found Killingsworth, Joey Rains and Appellant.

Appellant asked Pardue if he had any money. Pardue replied, "No," but mentioned his Social Security check. Appellant said he wanted to borrow five dollars to buy beer, and asked Pardue to cash the check. Pardue stated he "didn't want to."

Appellant announced he thought he knew where he could get some money. The quartet left Killingsworth's apartment and "went on a ride" in an automobile driven by Appellant.

During the ride, Appellant told Pardue, "I know where you could cash your check if . . . you just go get it." Appellant repeated the request, and Pardue acquiesced.

Appellant drove to Pardue's former apartment. Pardue got the check, and Appellant drove the quartet to "Cadwell's." Appellant accompanied Pardue inside, where Pardue received $643 for the check. Pardue handed Appellant five dollars, then put the remaining cash in his wallet.

They then returned to the automobile, and Appellant drove to a liquor store where they "picked up a 12–pack of Olympia beer."

The quartet then "drove around," eventually stopping at a mobile home. Rains entered the mobile home, remaining inside some 15 minutes. He returned to the automobile, and the quartet "took off and drove around."

When it began "getting dark," Appellant "pulled off into a gravel turnoff road" by a "low water bridge," stopped the automobile, and said, "We're going to rob you."

---

1. Those findings appear in the trial transcript. The judgment shows Appellant is a persistent offender and class X offender, but does not label him a prior offender.

2. Rule references are to Missouri Rules of Court (1992).

Rains told Pardue to get out of the automobile. Pardue obeyed. Rains also got out, grabbed Pardue's left arm, and pushed him forward. Pardue landed "on all fours," fracturing his left elbow and cutting his right hand. Pardue's testimony:

"Q. Now, you're down on the ground on all fours. What did Rains do?

A. He pulled a knife on me, held it to my throat, and said, 'I want your money.'

Q. What did you do?

A. So I reached into my back right pocket, took out my wallet, handed it to Rains, and he took my money and threw my wallet back down on the ground. I didn't look up or nothing. All I heard was the car doors close and the car take off."

Pardue walked to a "little gas station," where he obtained transportation by taxicab to the residence of his "girlfriend." After reporting the incident to police, Pardue went to a hospital, where his left arm was placed in a cast.

Pardue next encountered Appellant in the courthouse on the day of Appellant's preliminary hearing. Appellant approached Pardue and asked to talk "in the corner for a minute." Pardue described the confrontation:

"He said, 'I didn't do anything to you.' He says, 'I want to know how much money was taken and, I'll pay you back.' And I said, 'I want my dad to come over to listen to this.' So I had my dad come over to listen to what he was saying. And he said, 'If you just leave, I'll pay you back your money.' And I said, 'I can't leave because I've been subpoenaed to court.'

. . . .

And then we came back from lunch. I went into the restroom, and he followed me into the restroom and he said, 'You know, I can get a lot of years for this. So, please, just don't testify.' And I said, 'Well, I was subpoenaed and I have to testify.'"

Appellant does not maintain the evidence was insufficient to establish that Pardue was the victim of robbery in the first degree. Instead, Appellant's theory that the evidence was insufficient to support a verdict of guilty against him is, in his words:

"[T]he state did not prove that [Appellant] is criminally responsible for the conduct of . . . Rains. The state did not establish that [Appellant] aided or encouraged . . . Rains in robbing . . . Pardue. According to . . . Pardue's testimony, all of the affirmative actions comprising the elements of the offense were committed by . . . Rains."

Section 562.041.1, RSMo 1986, provides, in pertinent part:

"A person is criminally responsible for the conduct of another when

(1) . . .

(2) Either before or during the commission of an offense with the purpose of promoting the commission of an offense, he aids or agrees to aid or attempts to aid such other person in planning, committing or attempting to commit the offense."

██ Presence during commission of a crime is, alone, insufficient to support a conviction under the above statue. *State v. Daniels,* 861 S.W.2d 564, 566[1] (Mo.App. E.D.1993); *State v. Roper,* 819 S.W.2d 384, 385[2] (Mo.App.E.D.1991). However, the statute does not require that an accused personally perform each of the acts constituting the elements of the crime. *State v. Jeffries,* 858 S.W.2d 821, 824[5] (Mo.App.E.D.1993); *State v. Mills,* 809 S.W.2d 1, 3 (Mo.App.E.D. 1990). Any evidence fairly showing affirmative participation by an accused in aiding another to commit a crime is sufficient to support a conviction. *Jeffries,* 858 S.W.2d at 824[5]; *Mills,* 809 S.W.2d at 3[1]. Indicia of aiding and abetting include presence at the scene of the crime during its commission, flight therefrom, and association with others involved before, during, and after commission. *State v. Forister,* 823 S.W.2d 504, 508[3] (Mo.App.E.D.1992); *State v. McGowan,* 789 S.W.2d 242, 243[2] (Mo.App.W.D. 1990).

██ Here, it was Appellant who, upon learning Pardue had a Social Security check, repeatedly urged him to cash it. Appellant accompanied Pardue when the check was cashed and inferably saw the amount of mon-

ey. Appellant drove the quartet around until dusk, then stopped at an isolated site and said, "We're going to rob you." When Rains reentered the automobile after the robbery, Appellant drove away, leaving Pardue afoot.

When Appellant arrived at the courthouse for his preliminary hearing and saw Pardue there to testify, Appellant implored Pardue to depart without testifying, promising to reimburse him for the amount stolen if Pardue cooperated. Efforts by defendants to induce prosecution witnesses not to testify have been held admissible as manifesting a consciousness of guilt. *See: State v. Marvel,* 756 S.W.2d 207, 211–12 (Mo.App.S.D.1988).

We hold the evidence was sufficient for a reasonable juror to find beyond a reasonable doubt that Appellant, before and during the commission of the robbery, and with the purpose of promoting its commission, aided Rains in committing it. Indeed, Appellant's announcement, "We're going to rob you," as he stopped the automobile confirms Appellant and Rains had planned the robbery. Appellant's point III is denied.

■ Appellant's point II charges the trial court with error in "allowing" the prosecutor to cross-examine Appellant "as to factual details of [his] prior convictions." Appellant concedes this claim of error was not preserved for appellate review inasmuch as the lawyer who represented him at trial ("defense counsel") did not object to the questions when they were asked and did not mention the matter in the motion for new trial. *State v. Blankenship,* 830 S.W.2d 1, 10[7] (Mo. banc 1992). Nonetheless, Appellant insists we should review the point for plain error. *State v. Ervin,* 835 S.W.2d 905, 921[23] (Mo. banc 1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1368, 122 L.Ed.2d 746 (1993). Under plain error review, an appellate court will not reverse a conviction unless the alleged error resulted in manifest injustice or a miscarriage of justice. *State v. Simpson,* 846 S.W.2d 724, 726[1] (Mo. banc 1993).

Defense counsel presented Appellant as a witness in the trial court. During direct examination by defense counsel, Appellant admitted he went to prison in 1979 for "robbery down in Joplin." Asked by defense counsel how many years he received, Appellant answered, "Four and three, running together." Appellant added, "I stuck my finger in my coat ... I got a robbery charge for it ... I pled guilty to the charge."

During cross-examination, without objection by defense counsel, the prosecutor elicited testimony from Appellant that he was sent to the penitentiary in 1979 because he violated probation he had received in 1976 on a burglary charge. Then, this:

"Q. ... And after you got out of the pen, that's when you robbed somebody, and Judge Elliston sentenced you to 20 years—

A. That's right.

Q. —in the Department of Corrections?

A. I stuck my finger in my coat.

Q. Yeah. And you went to the pen for 20 years for it.

A. I did.

Q. Of course, I'm sure that Judge Elliston heard you say that you stuck your finger in your coat, and that's why you got 20 years, right?

A. Well, that's exactly what happened.

Q. How much money did you take then?

A. I didn't get out of the store. I was too drunk.

Q. Twenty years?

A. Twenty. I done seven years of that, too.

Q. And you'd do almost anything not to do it again?

A. I won't do it again, ever. I learnt (sic) seven years while I was there. I made the decision I was never going to get in trouble again."

Appellant acknowledges that when an accused elects to testify in his own defense, the prosecutor has an absolute right to introduce the accused's prior criminal convictions for the purpose of impeachment. § 491.050, RSMo 1986; *State v. Ballew,* 811 S.W.2d 507, 508[1] (Mo.App.W.D.1991); *State v. Shisler,* 752 S.W.2d 447, 451[6] (Mo.App.W.D.1988). However, says Appellant, a prosecutor cannot cross-examine an accused about details of prior crimes, but may show only the nature

and number of prior convictions. *State v. Teter*, 724 S.W.2d 538, 540[6] (Mo.App.W.D. 1986).

■■■ Although the *Teter* limitation generally applies, a prosecutor is permitted to question an accused about details if the accused initially fails to disclose all prior convictions and the inquiry is designed to elicit proof of an additional conviction. *Shisler*, 752 S.W.2d at 451–52[7, 8, 9]. In proving a conviction, a prosecutor may show the nature of the charge, place and date of the occurrence, and sentence. *State v. Hill*, 823 S.W.2d 98, 102[6] (Mo.App.E.D.1991); *State v. Applewhite*, 771 S.W.2d 865, 869 (Mo.App. E.D.1989).

On direct examination, Appellant admitted a robbery conviction in 1979 and testified he received concurrent sentences of four and three years. On cross-examination, the prosecutor elicited an admission from Appellant that he was convicted in 1976 for burglary, and that the 1979 sentence for robbery was in fact twenty years. The cases cited in the preceding paragraph permitted the prosecutor to extract that information from Appellant.

■■■ Furthermore, if an accused makes statements designed to blunt the impact of a prior conviction, it is within the trial court's discretion to permit the prosecutor to test and challenge such statements. *State v. Powell*, 632 S.W.2d 55, 58[3] (Mo.App.E.D. 1982). On direct examination, Appellant testified the 1979 robbery conviction resulted from his sticking his finger in his coat. When Appellant volunteered that detail, evidently endeavoring to minimize the impact of that conviction, the trial court had discretion to allow the prosecutor to ask about other details.

More importantly, however, the only additional details adduced on cross-examination were that Appellant failed to get out of the store because he was drunk. Those details bolstered Appellant's effort to downplay the conviction.

■■■ An appellate court will reverse a conviction for improper admission of testimony only where the error is prejudicial. *State v. Isa*, 850 S.W.2d 876, 895[45] (Mo. banc 1993). The effect, if any, of the testimony identified in the first sentence of the preceding paragraph was to paint the "finger-in-the-coat" robbery more comedic than villainous. Consequently, such testimony, even if improper, was not prejudicial.

Appellant's point II is denied, and the judgment is affirmed.

### Appeal 19213

In point I, the only point pertinent to this appeal, Appellant avers the motion court should have granted postconviction relief because Appellant received ineffective assistance from defense counsel. Appellant cites three instances where defense counsel was allegedly deficient.

First, says Appellant, defense counsel was derelict in failing to request a mental examination of Appellant prior to trial to determine whether he was competent to proceed.

Trial was set for October 6, 1992. The prosecutor and defense counsel appeared in court shortly before 9:00 a.m., that date. Appellant, who was free on bond, did not appear.

Defense counsel moved for a continuance, stating he had seen Appellant only twice. The first time was April 21, 1992, when Appellant paid defense counsel $100. Thereafter, according to defense counsel, Appellant failed to bring in the balance of the fee. Defense counsel recounted he had written Appellant several letters and had attempted to phone him, but discovered several weeks before trial that Appellant's telephone had been disconnected.

By conducting a daylong personal search, defense counsel "caught [Appellant] just by accident" two weeks before trial. Defense counsel told Appellant to come to the office to discuss the case. Appellant never came. Defense counsel sent his "paralegal" to search for Appellant, but the quest was unsuccessful. Defense counsel seemed vexed by Appellant's irresponsibility, explaining: "I don't believe he drinks; I don't believe he's on drugs. I can't explain him, Judge. I really can't."

The trial court denied the motion for continuance. However, Appellant appeared around 9:15 a.m., and the trial proceeded.

As reported earlier, Appellant testified in his own defense. He gave a detailed account of his version of the events surrounding the robbery, beginning at 10:00 a.m., the day of the robbery and ending after 8:00 p.m., that day. He also described his activities the next day, including the circumstances of his arrest. He was cross-examined about the robbery and his criminal record. A segment of the cross-examination appears earlier in this opinion.

After verdict, Appellant filed a timely motion for new trial. The primary complaint in it was that the trial court erred in denying the motion for continuance. The motion for new trial pled:

"[Appellant] failed to contact his attorney and the only opportunity the attorney had to discuss the matter with [Appellant] was for fifteen ... minutes immediately prior to the trial.

[Appellant] had been on a two week, night and day, drunk prior to Court and was not of sound mind or body at the time of the trial in order to assist his attorney...."

In support of the motion for new trial, defense counsel told the trial court, "I do know [Appellant] was very upset, nervous, shaking during the time that he testified."

Opposing the motion, the prosecutor declared: "On the day of trial [Appellant] was given a plea offer agreement. Decided not to accept that. Took his chances, rolled the dice, and lost."

Defense counsel presented Appellant as a witness in support of the motion for new trial. Appellant testified he drank vodka and beer every day during the two weeks immediately preceding trial. Appellant avowed: "I drank until I'd pass out. And as soon as I'd wake up again, I'd start drinking again."

Appellant blamed drinking for his failure to contact defense counsel before trial. On the morning of trial, said Appellant, "I was shaking, and I couldn't even function mentally." Then, this:

"Q. Do you know what's wrong with you mentally?

A. I have no idea. That's why I would like to have one [sic] a mental evaluation."

Defense counsel asked the trial court to "send [Appellant] for an examination to determine whether or not mentally he was able to present a defense." Defense counsel added, "I think the results will be that he wasn't."

The trial court denied the request for a mental examination and the motion for new trial. After pronouncing sentence, the trial court conducted the inquiry required by Rule 29.07(b)(4). In response to one of the trial court's questions, Appellant said, "I'd say it's more my fault than it is [defense counsel's] for not being there to prepare the case so he could give me a good sound legal counsel."

The trial court found no probable cause to believe Appellant received ineffective assistance from defense counsel.

In his 29.15 motion, Appellant made numerous complaints of ineffective assistance against defense counsel. The complaint pertinent to the issue we are now addressing was that defense counsel failed to have Appellant examined by a "neurologist or other medical or mental health professional to determine whether [he] suffered from some mental defect that impaired [his] ability to assist his attorney in his defense."

Although not precisely spelled out in the motion, the obvious theory of the complaint was that defense counsel should have requested the examination before (or perhaps during) trial. As we have seen, defense counsel did request an examination at the hearing on the motion for new trial.

Appellant presented defense counsel as a witness in the motion court. Defense counsel testified that when Appellant appeared for trial, he "was horribly hung over ... he just wasn't in control of himself." Defense counsel's testimony continued:

"Q Can you describe any specific behavior?

A Yes, he was perspiring; he was shaking. He wasn't clear in his answers to

the questions that I asked. He just, I felt, was incompetent.

Q Could he even make sense when he spoke?

A No.

Q Did he appear rational?

A No, he didn't. I would ask him a question, and he wouldn't answer that question, but would answer something else. His statements to me didn't hang together. He didn't really know what he was doing or where he was.

. . . .

Q Did you consider requesting a mental exam prior to trial?

A I can't remember. I don't think I did prior to trial, because the judge had the jury here, and he was pushing very hard to get the matter tried.... I know I did before sentencing. But before trial, I didn't, because the judge was just in such a hurry, and had the jury here ready to go."

When a prisoner seeks postconviction relief on the ground that his lawyer rendered ineffective assistance in failing to move for a mental examination, the prisoner must show the existence of a factual basis indicating his mental condition was questionable, which should have caused the lawyer to initiate an independent investigation of the prisoner's mental state. *O'Neal v. State,* 724 S.W.2d 302, 305[4] (Mo.App.S.D.1987); *Ginnery v. State,* 645 S.W.2d 202, 203[2] (Mo. App.S.D.1983). In the absence of some suggestion of mental instability, counsel has no duty to initiate an investigation of an accused's mental condition. *State v. Powell,* 793 S.W.2d 505, 509[11] (Mo.App.E.D.1990); *O'Neal,* 724 S.W.2d at 305–06[5].

Section 552.020, RSMo 1986, prescribes the procedure to be followed when an accused, as a result of mental disease or defect, lacks capacity to understand the proceedings against him or to assist in his own defense. Section 552.010, RSMo 1986, provides that alcoholism without psychosis does not constitute a mental disease or defect. *State v. Ingram,* 607 S.W.2d 438, 441[3] (Mo.1980).

Appellant presented no evidence in the motion court (or the trial court, for that matter) that defense counsel had any reason, prior to Appellant's tardy appearance for trial, to suspect Appellant had a mental disease or defect within the meaning of §§ 552.020 and 552.010. Additionally, Appellant fails to explain how defense counsel could have had him examined when counsel couldn't find him.

Appellant, testifying in the motion court, repeated his narrative about a two-week drinking binge immediately preceding trial. His testimony:

"Q Did you drink the night before trial?

A Yeah. I passed out that night at approximately 2:00 or 3:00 in the morning, as far as I understand.

Q Did you drink the day of trial?

A During the day of trial, I hadn't drank."

The prosecutor's cross-examination of Appellant contained this exchange:

"Q Did you communicate to [defense counsel] prior to the trial at any time that you were a day and night drunk, and that you couldn't help him?

A Before the trial?

Q Yes.

A No.

Q Then how was he supposed to know it?

A I don't know."

The record thus demonstrates that the only possible basis for Appellant's claim that defense counsel was guilty of ineffective assistance in failing to request a mental examination before trial is that Appellant's appearance, mannerisms and speech when he arrived for trial indicated he had a mental disease or defect rendering him incapable of understanding the proceedings against him or assisting in his defense. The issue thus becomes whether defense counsel should have asked the trial court to abort the trial (with the jury panel waiting) so Appellant— who had been free on bond several months— could have a mental examination. In that regard, we find no hint in the record that Appellant, on the morning of trial, told defense counsel he (Appellant) had any history

of mental infirmity or that he wanted a mental examination.

Hal Lawless, a certified substance abuse counselor, testified for Appellant in the motion court. Lawless recounted he evaluated Appellant October 6, 1993 (one year after trial), and concluded Appellant was an alcoholic, "more likely in the third stage, which is the most advanced stage that we measure degrees of alcoholism." Lawless' testimony continued:

"Q ... when you examined [Appellant] ... did you find any indication of alcohol induced psychosis?

A No, I did not.

....

Q ... even if [Appellant] does not suffer from alcohol induced psychosis now, does that mean that he could not have been suffering from it at the time of trial?

A He could have been suffering from it at the time of trial based on how much he was drinking, and based on having stopped prior. If I recall correctly, he had stopped a few hours prior to the trial."

The motion court's findings included these:

"2. This Court concludes that [defense] counsel was not ineffective for failing to have [Appellant] examined by a medical or mental health professional prior to trial to determine if [Appellant] was competent to stand trial. [Appellant] testified at trial, clearly recalled the events on the day of the robbery, who was present, and their activity of the entire day. He recalled with specificity the convictions he previously received. At no time during any of the criminal proceedings did [Appellant] appear to be incompetent or in need of a mental examination.

3. [Defense] counsel testified at the evidentiary hearing that he explained [Appellant's] Fifth Amendment right[s] to him, that he understood them, and waived them. [Appellant] testified to the same at the evidentiary hearing.

4. Mr. Hal Lawless, a certified substance abuse counselor, testified that [Appellant] is a chronic alcohol abuser. Mr.

Lawless stated that due to the passage of time it is not possible to conclude with certainty whether or not [Appellant] was suffering from alcohol induced psychosis at the time of trial. Mr. Lawless did conclude that [Appellant's] 'advanced alcoholism' may well have impaired his ability to assist in his defense. However, [Appellant's] drinking did not impair his ability to assist in his defense, and there is no indication that the intoxication was anything other than voluntary."

 Our review of the motion court's findings and conclusions is limited to a determination of whether they are clearly erroneous. Rule 29.15(j); *State v. Starks*, 856 S.W.2d 334, 336[1] (Mo. banc 1993). We brand them clearly erroneous only if a review of the entire record leaves us with a definite and firm impression that a mistake has been made. *State v. Vinson*, 800 S.W.2d 444, 448[8] (Mo. banc 1990).

 It was Appellant's burden to prove his grounds for relief by a preponderance of the evidence. Rule 29.15(h); *State v. Stepter*, 794 S.W.2d 649, 657 (Mo. banc 1990). Credibility of the witnesses was for the motion court's determination. *State v. Duckett*, 849 S.W.2d 300, 306[8] (Mo.App.S.D.1993); *State v. Tubbs*, 806 S.W.2d 746, 749[8] (Mo. App.S.D.1991). The motion court was free to disbelieve testimony even where uncontradicted. *Duckett*, 849 S.W.2d at 306[8]; *Gresham v. State*, 813 S.W.2d 120 (Mo.App.S.D. 1991). We defer to the motion court's superior opportunity to judge credibility. *State v. Twenter*, 818 S.W.2d 628, 635[8] (Mo. banc 1991).

It is inferable from the motion court's finding number 2, quoted *supra*, that the motion court concluded the quality of Appellant's testimony at trial was such that a reasonably competent lawyer would not have suspected Appellant, as a result of mental disease or defect, lacked capacity to understand the proceedings against him or assist in his defense.

Although defense counsel testified in the motion court that he felt Appellant was "incompetent" at trial, the motion court was not obliged to believe that defense counsel, on

the day of trial, attributed Appellant's condition to anything other than a hangover. The motion court could have reasonably concluded that by the time of the hearing on the motion for new trial, defense counsel, with benefit of hindsight, had come to believe a mental examination should be done.

We are mindful, as emphasized by Appellant, that the motion court judge did not preside at the trial, hence he, like us, did not have the opportunity to observe Appellant during his trial testimony. However, as we have seen, Appellant and defense counsel asked the trial judge, during the hearing on the motion for new trial, to order a mental examination. The trial judge, who did observe Appellant testify at trial (Appellant's testimony covered some 25 pages), denied the motion.

We, like the motion court, have read Appellant's trial testimony. It parallels Pardue's except as to details that incriminate Appellant. Appellant admitted stopping the automobile at the site where the robbery occurred, but said he did so because "somebody suggested taking a leak." Appellant denied saying, "We're going to rob you," and denied seeing Pardue fall. When Rains reentered the automobile, Appellant quoted Rains as saying, "David's not going." The alertness and responsiveness demonstrated in the excerpt from Appellant's cross-examination set forth earlier in our discussion of point II appear throughout his entire testimony.

▮ We share the motion court's opinion that Appellant's trial testimony belies his claim that defense counsel should have suspected, on the day of trial, that Appellant, as a result of mental disease or defect, lacked capacity to understand the proceedings against him or to assist in his defense. However, even if defense counsel was remiss in failing to make a day-of-trial motion for mental examination, Appellant has failed to demonstrate entitlement to postconviction relief.

To prevail on a claim of ineffective assistance of counsel, a prisoner must show not only that his lawyer failed to exercise the customary skill and diligence that a reasonably competent lawyer would have exercised under similar circumstances, but also that

the prisoner was thereby prejudiced. *Sanders v. State*, 738 S.W.2d 856, 857 (Mo. banc 1987).

Appellant, as we understand point I, maintains he was prejudiced because he was "legally incompetent" at time of trial. However, his evidence in the motion court failed to support that thesis.

As observed earlier, mental disease or defect, as statutorily defined, does not include alcoholism without psychosis. Witness Lawless found no indication of alcohol induced psychosis when he evaluated Appellant a year after trial, and conceded on cross-examination that he (Lawless) could not "tell ... with any accuracy whether or not [Appellant] had alcohol induced psychosis on the day of trial."

The motion court obviously found the evidence insufficient to establish that Appellant, at time of trial, had a mental disease or defect as statutorily defined. On the record here, that finding is not clearly erroneous.

While Appellant, at time of trial, may have had a hangover, he does not contend in this appeal that defense counsel should have requested a continuance to allow him to recover from his stupor. We therefore need not, and do not, decide whether an accused, free on bond, is entitled to postpone his trial by showing up in such condition.

We deny Appellant's claim that the motion court erred in rejecting his contention that defense counsel rendered ineffective assistance in failing to request a mental examination before trial.

▮ We next consider Appellant's complaint that defense counsel rendered ineffective assistance in "failing to object when the [prosecutor] cross-examined Appellant as to factual details surrounding his prior convictions." The cross-examination on which this complaint is based is set forth earlier in our discussion of point II. There, we concluded it was proper for the prosecutor to elicit some of those details, that had defense counsel objected it would have been within the trial court's discretion to allow the prosecutor to ask about others, and that in any event the details were not prejudicial.

▮ Defense counsel cannot be found ineffective for failing to make a meritless

objection. *Sidebottom v. State*, 781 S.W.2d 791, 799[19] (Mo. banc 1989), *cert. denied*, 497 U.S. 1031, 110 S.Ct. 3295, 111 L.Ed.2d 804 (1990). Furthermore, absent prejudice, a claim of ineffective assistance fails. *Sanders*, 738 S.W.2d at 857. The claim of ineffective assistance identified in the preceding paragraph is without merit.

Appellant's remaining claim of ineffective assistance is that defense counsel failed to object to a portion of the prosecutor's closing argument. The motion court rejected the claim.

Having examined the prosecutor's argument, we determine that the motion court's finding on that issue is not clearly erroneous, that no error of law appears, and that extending this opinion by further discussion of the issue would have no precedential value. The claim of error is therefore denied in compliance with Rule 84.16(b).

The judgment of the motion court is affirmed.

GARRISON, P.J., and PREWITT, J., concur.