**STATE of Missouri, Respondent,**

v.

**Stephen L. CAULFIELD, Appellant.**

**No. WD 48662.**

Missouri Court of Appeals,
Western District.

Oct. 25, 1994.

■■■■■■■■■■■■■■■

Donald T. Norris, Robert G. Duncan, Kansas City, for appellant.

D. Bryant King, III, Kimberly A. Wisniewski, Asst. Pros. Attys., Platte County, Platte City, for respondent.

Before KENNEDY, P.J., and BRECKENRIDGE and SPINDEN, JJ.

SPINDEN, Judge.

Stephen L. Caulfield appeals his conviction, after a judge-tried case, of sexual abuse in the third degree, a class B misdemeanor, and indecent exposure, a class A misdemeanor. Caulfield complains that the state did not present sufficient evidence to establish that he was guilty beyond a reasonable doubt. We disagree and affirm the trial court's judgment.

Considering the evidence in a light most favorable to the verdict, the state established that Caulfield was a reserve Parkville police officer. The 17–year–old victim was a volunteer fire fighter for the South Platte Fire Department, Station No. 3. The victim, Jackie, knew Caulfield. She admired Caulfield and trusted him. On Friday, May 8, 1992, at about 11:30 P.M., Caulfield was at the fire station and agreed to let Jackie ride in the patrol car with him if she got her parents' permission. She did.

As they rode together in the patrol car, they talked about school and about the victim's studies for her EMT certification. They began talking at some point about sex. Jackie admitted that she was not uncomfortable discussing sex so long as the discussion was general and not specific to her. Caulfield then told her that he had wanted to ask her out, but the "guys on the department" said that she was frigid. He also told her that she had "champagne glass boobs." He said that he wanted to have sexual intercourse with her, but she refused. He told her, "Don't get me wrong. I want to f__ your brains out." He then requested a "blow job," but she declined. She also refused his request for a "hand job." Caulfield asked her to expose her breasts and to encourage him as he masturbated, but she refused. The victim said that initially she believed his requests were a joke. She said that she became frightened when Caulfield persisted in his requests for sexual acts.

At around 1:30 A.M., Sam Mitchell, a fire fighter at the South Platte station became concerned that Jackie had not returned. He asked the dispatcher to call Caulfield. Caulfield responded that he would return to the station in five minutes. Instead of driving back to the station, Caulfield parked the patrol car on a dark back road.

Caulfield asked Jackie again for a "blow job" or a "hand job." She refused those requests and the request that she watch him as he "jacked off." Caulfield got out of the car and walked to Jackie's side. While standing in front of Jackie, he unzipped and re-zipped his pants. He rubbed her legs and her "crotch." He asked if he could "finger" her, and she said he could not. Caulfield said that he wanted to "lick her clit" and that he could make her "come" five times.

Caulfield put his hand inside her pants—but not inside her underwear—and rubbed her through her underwear. The victim grabbed Caulfield's hand and pulled it from her pants. Caulfield stood up and took his penis out of his pants and handled it. Caulfield then told the victim that he had to "pee," so he closed her door and walked to car's rear.

Caulfield eventually got back in the car and drove Jackie to the fire station. They arrived at the station at about 2:00 A.M. Jackie was visibly upset. Mitchell followed her outside. He asked her if Caulfield had touched her, and she told him, while crying, what had happened. She asked Mitchell not to tell anyone, and he did not. Two days later, Jackie reported the incident to the Platte County sheriff's department.

Caulfield contends that this evidence was not sufficient to convict him of the indecent exposure charge because the victim's testimony was "conflicting, inconsistent, contrary to common experience and uncorroborated by other evidence" and because it did not

establish that he knew his conduct was likely to cause affront or alarm. We disagree.

■ Section 566.130.1, RSMo 1986, provides that a "person commits the crime of indecent exposure if he knowingly exposes his genitals under circumstances in which he knows that his conduct is likely to cause affront or alarm." In cases involving sexual offenses, a victim's uncorroborated testimony is sufficient to support a conviction. *State v. Sladek*, 835 S.W.2d 308, 310 (Mo. banc 1992). If, however, the victim's testimony is contradictory or when applied to the facts in the case, the testimony is not convincing, the victim's testimony must be corroborated. *State v. Kuzma*, 751 S.W.2d 54, 58 (Mo.App. 1987); *State v. Nelson*, 818 S.W.2d 285, 288 (Mo.App.1991).[1] The victim's testimony must be " 'so contradictory and in conflict with physical facts, surrounding circumstances and common experience, that its validity is thereby rendered doubtful.' " *Sladek*, 835 S.W.2d at 310 (citation omitted).

Caulfield argues that the evidence demonstrated his exposing himself did not cause the victim "affront or alarm." He notes evidence that Jackie was a fire and police department "groupie"; she admired, respected and trusted Caulfield and wanted to go ride in the patrol car with him; she admitted that she talked with Caulfield about sex and was comfortable with that conversation; she mentioned the presence of "dirty" movies at the fire station and suggested that Caulfield might want to see them with her; she told Caulfield about her own sexual experiences; she admitted that she thought Caulfield was joking at first when he asked for the sexual favors; when Caulfield stopped at one point to talk with two deputies, she did not say anything or attempt to get into their car; when they returned to the fire station, she made plans to meet with Caulfield to study for her EMT certifications; she told her fellow fire fighter Mitchell that everything was okay and that Caulfield had not said anything to upset her; and she told Mitchell not to tell anyone about what Caulfield had done.

■ "Unless there are gross inconsistencies and contradictions which bear on a proof essential to the case, 'a resolution of conflicts in the evidence and the determination of the credibility of the witnesses are matters for the [trier of fact] to determine.' " *Nelson*, 818 S.W.2d at 289 (citation omitted). Further, the corroboration rule is triggered only by inconsistencies in the victim's own statements and does not apply to inconsistencies between the victim's statements and statements of others. *Sladek*, 835 S.W.2d at 310.

■ The victim's testimony was not so contrary to the physical facts, common experience and surrounding circumstances as to make its validity doubtful. All of the evidentiary discrepancies pointed out by Caulfield went to credibility and the weight of the evidence—issues for the trier of fact to resolve. Jackie's testimony on the essential elements of the indecent exposure offense was consistent and needed no corroboration.

■ The evidence established Caulfield requested Jackie's sexual favors many times, and she refused each time. When Caulfield put his hand in her pants, she immediately removed it. Caulfield should have been well aware that she was not interested in his sexual advances, but he continued his acts by exposing himself. The finder of fact had sufficient evidence from which to conclude that Caulfield knew that exposing his penis was likely to cause affront or alarm.

■ Next, Caulfield contends that the evidence was insufficient to convict him of sexual abuse in the third degree. He asserts that Jackie's testimony that Caulfield rubbed her "crotch" and that he put his hand inside her pants but not inside her underwear was not sufficient to establish a "sexual contact." He also claims that his touching was with her consent. We disagree.

Section 566.120, RSMo Cum.Supp.1993, says, "A person commits the crime of sexual abuse in the third degree if he subjects another person to whom he is not married to sexual contact without that person's con-

1. The Nelson case questioned whether the corroboration rule was still in effect in Missouri; however, in Sladek, decided after Nelson, the Missouri Supreme Court still cited the corroboration rule case as a viable doctrine. 835 S.W.2d at 310.

sent." Section 566.010(2), RSMo Cum.Supp. 1993, defines sexual contact as "any touching of the genitals or anus of any person, or the breast of any female person, or any such touching *through the clothing,* for the purpose of arousing or gratifying sexual desire of any person[.]" [2]

■ As to the issue of consent, the evidence established that Jackie repeatedly refused Caulfield's sexual requests. Further, when Caulfield placed his hand inside her pants, she removed it. The trier of fact had sufficient evidence from which to conclude that Caulfield knew that Jackie did not consent to any sexual contact.

Caulfield also argues that the evidence was not sufficient to establish a sexual contact. He asserts that because Jackie said that he rubbed her "crotch"—and did not say that he rubbed her "genitals"—the evidence did not establish a sexual contact. His contention is without merit.

■ In *State v. Ek,* 834 S.W.2d 828 (Mo. App.1992), the evidence showed that the victim was on top of the defendant, straddling him and that their pelvic regions touched while the defendant was still clothed. The

court found that this was sufficient to prove sexual contact within the meaning of the statute. *Id.* at 832. In *State v. Seemiller,* 775 S.W.2d 273 (Mo.App.1989), the evidence established that the defendant was on top of the adult victim such that their pelvic regions touched while they were still clothed and that the defendant placed his hand between the victim's legs. The court found that this was sufficient to prove sexual contact. In neither of these cases did the witnesses use the term "genitals." Accepting the state's evidence against Caulfield as true, and giving the state the benefit of all reasonable inferences as we must do in reviewing this case, the evidence was sufficient to prove a sexual contact. *State v. Willyard,* 847 S.W.2d 948, 949 (Mo. App.1993).

The judgment of the trial court is affirmed.

All concur.

---

2. We added the emphasis.