STATE of Missouri, Respondent,

v.

Shirley Jo PHILLIPS, Appellant.

No. 74785.

Supreme Court of Missouri,
En Banc.

Feb. 25, 1997.

Rehearing Denied March 25, 1997.

Craig A. Johnston, Asst. Public Defender, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Attorney General, David R. Truman, Assistant Attorney General, Jefferson City, for respondent.

LIMBAUGH, Judge.

A jury found Shirley Jo Phillips guilty of first degree murder and sentenced her to death. The postconviction court overruled Phillips' Rule 29.15 motion after an evidentiary hearing. On consolidated appeal, we affirm the conviction and the denial of that part of the motion for post-conviction relief as it pertains to the conviction. We reverse the denial of relief on the Rule 29.15 motion as it pertains to the penalty phase proceeding, vacate the sentence of death, and remand for new penalty phase proceedings.

## I. FACTS

The evidence at trial, which we review in the light most favorable to the verdict, *State v. Storey*, 901 S.W.2d 886, 891 (Mo. banc 1995), reveals the following:

On Friday, October 6, 1989, Wilma Plaster's dismembered body was found several feet from the side of Farm Road 105 in Greene County, Missouri. The cause of her death was a single gunshot wound to the head. The medical examiner concluded that the condition of Plaster's body was consistent with the murder having occurred on Tuesday, October 3, 1989. Two employees of the Top Rail Lounge in Springfield, Missouri, saw Phillips and Plaster together at the bar

on the night of October 3. Moreover, two of Plaster's neighbors in Hollister, Missouri, heard a noise, similar to the firing of a gun, coming from Plaster's garage around 10:30 p.m. on that same night.

Investigators determined that the bullet in Plaster's head was fired from a gun that was used by Phillips' son, Glenn "Buddy" Minster, for target shooting on Wednesday, October 4, 1989. Also on October 4, one of Plaster's neighbors saw a car, which resembled the 1976 gray Cadillac owned by Phillips, pull into Plaster's garage. A forensic investigator performed tests in Plaster's garage and house that indicated the presence of human blood in both locations. Tests conducted on Phillips' car also indicated the presence of human blood in the car and the trunk.

After checking Plaster's mail, the police discovered a bank statement that contained a canceled check in the amount of $4,050.00 that was payable to Phillips and had an endorsement on the back in the name of Joann Phillips, a pseudonym used by Shirley Jo Phillips. A handwriting expert determined that Plaster did not write the check and that her signature on the check was a forgery. The expert also concluded that Phillips disguised her penmanship in handwriting samples she provided to the police on October 9, 1989.

On October 10, 1989, Nora Martin contacted the police with information that Phillips had been to visit her the day before and that after Phillips' departure, Martin found trash bags and a gun underneath her porch. The police searched the trash bag and recovered cleaning solvents, canceled checks from Plaster's bank account, Plaster's check register, checks and a check register in Phillips' name, as well as other items. Phillips' fingerprints were found on the trash bags as well as the items contained inside. After testing the handgun found under the porch, a forensic examiner concluded that it was the same handgun that fired the bullet removed from Plaster's head.

Based on the foregoing evidence, the jury found Phillips guilty of first degree murder. Following penalty phase evidence, the jury found the statutory aggravating circumstance that the murder of Wilma Plaster involved depravity of mind and recommended a sentence of death.

## II. DISCLOSURE ISSUE

Phillips first claims that the police withheld exculpatory evidence during her trial. In particular, she argues that the Rule 29.15 court clearly erred in denying her claim that the State's failure to disclose the evidence violated her right to due process as well as other constitutional rights, and further that she is entitled to a new trial because the evidence withheld is "newly discovered" evidence that would affect the outcome of the trial.

■ The alleged exculpatory evidence is an audiotape of a statement given by Joyce Hagar to the police on August 10, 1990, in which Hagar said that "Buddy" Minster, Phillips' son, told her that he and his mom killed Wilma Plaster and that his mom drove while he scattered her body. In addition, he told her that they threw Plaster's hands into the creek. Hagar said that Buddy even told her that he killed his grandmother and that he was the one that cut up "all of 'em." The existence of this evidence was not disclosed to Phillips before trial despite numerous discovery requests, including a specific request for tapes of any interviews of any witnesses. Although defense counsel interviewed Hagar before trial, Hagar did not disclose that she had given a statement to the police.

Resolution of this issue is governed by *Brady v. Maryland*, which held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. 83, 87, 83 S.Ct. 1194, 1196–97, 10 L.Ed.2d 215 (1963). Exculpatory evidence is evidence that is favorable to an accused. *United States v. Bagley*, 473 U.S. 667, 676, 105 S.Ct. 3375, 3380–81, 87 L.Ed.2d 481 (1985). Favorable evidence is considered material "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Id.* at 682, 105 S.Ct. at

3383. "A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *Id.* "[O]nce a reviewing court applying *Bagley* has found constitutional error there is no need for further harmless-error review." *Kyles v. Whitley,* 514 U.S. 419, ——, 115 S.Ct. 1555, 1566, 131 L.Ed.2d 490 (1995).

Phillips' position is that Hagar's taped statement is exculpatory because it negates her involvement in the murder and dismemberment of Wilma Plaster. Even viewing this evidence in the light most favorable to Phillips, it is difficult to understand how Buddy's alleged statement to Hagar that he and his mom killed Plaster and that his mom drove while he threw out the body and hands is exculpatory. This statement directly implicates Phillips in the murder of Plaster. The fact that Phillips may have committed the murder together with her son in no way exonerates her.

Buddy's comment that he was the one who cut up the bodies is exculpatory, however, because it tends to clear Phillips of involvement in that aspect of murder—the disposition of the body. It is not exculpatory on the issue of her guilt, because it does not qualify or contradict the statement that the two of them both participated in the actual killing. But, Buddy's admission that he was the one who cut up the body, with the inference that Phillips did not do so herself, is both exculpatory and material to the issue of Phillips' punishment. The evidence of Buddy's conduct is exculpatory because it shows that Phillips' involvement in the dismemberment, if any, was tangential rather than direct, and that Buddy, more than Phillips, was the depraved party. The materiality of this evidence is exemplified by the State's closing argument in the penalty phase where the State repeatedly contended to the jury that Phillips deserved the death penalty because she, personally, had cut up Wilma Plaster's body. Moreover, the only aggravating circumstance found by the jury to support the sentence of death was depravity of mind based on the dismemberment of the body. We conclude, therefore, that the exclusion of the evidence that Buddy dismembered the body was material, because it so undermines confidence in the imposition of the death penalty that it gives rise to a reasonable probability that the outcome of the punishment phase would have been different. The State's failure to disclose the statement, which would have allowed Phillips to call Hagar as a witness, justifies a new penalty phase proceeding.

■ The State's response to this conclusion is that the result of the proceeding would not have been different because Hagar's testimony was hearsay and could not have been admitted despite its materiality. Although we agree that Hagar's recitation of Buddy's statements is hearsay and that it does not fall within a recognized exception to the hearsay rule, *see, e.g., State v. Blankenship,* 830 S.W.2d 1, 6–7 (Mo. banc 1992) (holding that Missouri does not recognize a statement against penal interest exception to the hearsay rule in criminal proceedings), that does not end the question. In *Green v. Georgia,* 442 U.S. 95, 97, 99 S.Ct. 2150, 2151–52, 60 L.Ed.2d 738 (1979), the Supreme Court held that the exclusion of hearsay testimony would violate due process rights where the testimony is "highly relevant to a critical issue in the punishment phase of the trial," and substantial reasons exist to assume the reliability of the hearsay statements. The particular indicia of reliability noted in *Green* were (1) that the statements were made spontaneously to a close friend, (2) that the statements were corroborated by other evidence, and (3) that the statements were against interest. *Id. See also Chambers v. Mississippi,* 410 U.S. 284, 300–01, 93 S.Ct. 1038, 1048–49, 35 L.Ed.2d 297 (1973).

Having determined that Buddy's statements were material to Phillips' punishment, they necessarily meet the relevancy requirement under *Green,* and the focus need be on reliability only. In that regard, the facts of this case comport substantially with the indicia of reliability found in *Green.* Although Buddy was not a close friend of Hagar, he did confess to the murder and dismemberment spontaneously during their social gathering. Further, Buddy's knowledge of the gruesome details of the crime corroborates his statement to Hagar. In particular, he told her that Plaster's hands were not dis-

carded with the other parts of the body, but rather were thrown in the river, which was consistent with the evidence that Plaster's hands were not found by the police near the body, and, in fact, were never recovered. In addition, the fact that Buddy used the murder weapon for target practice within a day or so of the murder is also corroboration of his involvement and knowledge. Finally, Buddy's statements were obviously statements against penal interest. Following *Green*, we conclude that the facts constitute substantial reasons to assume the reliability of the hearsay statements and that admission of Hagar's testimony during the penalty phase would be proper. As stated, a new penalty phase is required to entertain this evidence.

## III. GUILT PHASE ERRORS

### A. HANDWRITING EXEMPLARS

■ Phillips contends that the trial court erred in allowing evidence at trial of her refusal to comply with the court's order to provide handwriting samples. Although Phillips had voluntarily provided handwriting samples to an investigator for the State in October 1989, several months later the trial court granted the State's motion for production of additional handwriting samples on the basis that the earlier samples were insufficient. On May 17, 1990, the State, armed with the court order, attempted to obtain the samples from Phillips, but she refused to comply with the court order. On October 23, 1990, the court ordered Phillips to comply with its earlier order and, on November 7, 1990, entered a third order that set forth its justifications for the production of the samples and provided that the samples be produced at the Greene County Jail on November 27, 1990 at 1:30 p.m. The State, however, did not attempt to obtain the samples on November 27. Over Phillips' objection, the trial court allowed the State to present evidence that Phillips refused to give a handwriting sample on May 17, 1990.

The sole ground on which Phillips supports her claim of error in the admission of the May 17 refusal is that the trial court did not comply with Rule 25.06—the rule pertaining to court-ordered disclosures by defendants in criminal cases—in issuing its March 1990 order to provide handwriting samples. She does not allege, however, that she refused to give the handwriting samples on May 17 because of any failure to comply with Rule 25.06, and, in fact, her attorney encouraged her on that day to comply with the court order.

Rule 25.06(B)(6) allows a court to order a defendant to provide a handwriting sample under certain conditions. The court must: (1) hear evidence on the necessity of discovery requested under Rule 25.06(B), if requested by any party; (2) make the grounds for its order directing discovery a part of the record; and (3) specify the material and information to be disclosed and the time and manner in which the defendant shall make disclosure. Rule 25.06(C)–(E). Phillips complains that the trial court failed to comply with any of these requirements. Even if the court did not fully comply, Phillips has not explained how she was prejudiced. As stated, she did not base her decision to refuse to submit a sample on May 17 on any perceived failure of the court to comply with Rule 25.06. Regardless of the court's technical compliance with Rule 25.06, it appears that Phillips still would have refused to provide a handwriting sample on May 17. Thus, the trial court did not commit reversible error in admitting evidence of the refusal.

### B. CLOSING ARGUMENTS

■ Phillips next raises several claims of improper comments made by the State during its guilt phase closing argument, only two of which, however, were properly preserved for appellate review. The first is a claim that the State improperly shifted the burden of proof to Phillips. The prosecutor stated:

> If an innocent person completely blameless in this, had nothing to hide, what would they have done? They would have written out these exemplars just like they would on every one of these other checks. What would a guilty person do? Disguise their writing? Try to write differently? Sign their name differently? What did the defendant do with these handwriting exemplars?

Mr. Buel told us she disguised her writing. *What reason? For what reason? Maybe [defense counsel] will answer that question for us.*

Phillips objected to the highlighted portion, arguing that it shifted to her the burden of disproving her guilt, but the trial court overruled the objection.

. At trial, the State presented evidence that Phillips disguised her writing in samples she provided to the State. The prosecutor's comments were simply a way of saying that an innocent person would not disguise her handwriting, which is a reasonable inference from this evidence. More importantly, the highlighted statements appear to be an effort by the State to point out that Phillips had not provided a legitimate reason for disguising her handwriting; thus, she failed to rebut the logical inference from the State's evidence. The State may refer to a defendant's failure to offer evidence, *State v. Tolliver*, 839 S.W.2d 296, 300 (Mo. banc 1992), so long as there is no reference to the defendant's failure to testify. We conclude therefore, that the prosecutor's comments concerning the handwriting samples fall within this rule and were not an attempt to shift the burden of proof to Phillips. The trial court did not err in overruling the objection to these statements.

■ The other claim preserved for review involved the following statements: "[T]he only thing standing between [Shirley] and that door, ladies and gentlemen, are twelve of you. And she's counting on adding your names to the list of people ... that she used." Although the trial court sustained Phillips' objection to these statements, she argues that the court erred in denying her motion to strike and motion for a mistrial because the statements were designed to personalize and instill fear in the jury.

■ Closing argument is considered personalized only if it suggests personal danger to the jurors or their families if the defendant is acquitted. *See State v. Kreutzer*, 928 S.W.2d 854, 872 (Mo. banc 1996), *cert. denied*, —— U.S. ——, 117 S.Ct. 752, 136 L.Ed.2d 689 (1997). Reviewing the statements in this case in context, there is no

indication that the prosecutor was attempting to personalize the argument and instill fear in the jurors. In the statements immediately preceding those quoted above, the prosecutor emphasized to the jury that Phillips had used her friends and taken advantage of them, and the statements objected to were merely an attempt to convince the jury that Phillips would also like to use them in order to gain her freedom. They were not an attempt to make the jury believe Phillips would physically harm them if acquitted. The trial court did not err by rejecting the requests to declare a mistrial or strike the argument.

Phillips next asserts plain error by the trial court in allowing the prosecutor to allegedly misstate evidence by arguing that Phillips' boots were the same size as the footprints found in Plaster's house. Phillips did object at trial, but the claim of error was not properly preserved for appellate review. In response to Phillips' objection, the trial court instructed the jury to remember the evidence. A review of the record shows that the prosecutor in fact told the jury that he had never said that Phillips' boots were the ones that left prints in Plaster's house. The court committed no error, plain or otherwise, in responding to this statement.

In her remaining claims of improper argument, Phillips argues that the trial court erred in failing to *sua sponte* declare a mistrial based on a variety of statements made by the prosecutor. None of these allegedly improper statements were objected to by Phillips at trial; thus, we review for plain error. The first claim is that the prosecutor misstated evidence when he argued that the shot to Plaster's head was from close range and when he argued that Phillips had used people for her own advantage. From our review of the record, this argument was supported by the evidence.

■ The prosecutor is also accused of making improper religious references when he called the dismemberment a despicable unchristian act, stated Phillips had offered up her son as a sacrificial lamb, and argued that Phillips had placed her own kiss of Judas on her son. Counsel should avoid excessive references to the Bible during closing argument. *See State v. Shurn*, 866 S.W.2d 447,

464 (Mo. banc 1993), *cert. denied,* 513 U.S. 837, 115 S.Ct. 118, 130 L.Ed.2d 64 (1994). These brief, isolated comments, made during a 75–minute closing argument, do not, however, constitute excessive references.

Finally, Phillips claims that the prosecutor impermissibly urged the jurors to convict Phillips to send a message to the community. Such an argument is not improper. The prosecutor is allowed to argue that the jury should send a message that criminal conduct will not be tolerated. *See, e.g., State v. Cobb,* 875 S.W.2d 533, 537 (Mo. banc), *cert. denied,* 513 U.S. 896, 115 S.Ct. 250, 130 L.Ed.2d 172 (1994); *State v. Santonelli,* 914 S.W.2d 13, 14 (Mo.App.1995); *State v. Sanders,* 903 S.W.2d 234, 239 (Mo.App.1995).

In sum, the trial court committed no error in failing to declare a mistrial during any portion of the guilt phase closing argument. This point is denied.

## C. SUPPRESSION OF BUDDY'S CRIMINAL HISTORY

Phillips claims that the trial court erred in sustaining the State's motion in limine to prevent her from impeaching Buddy's credibility with his extensive criminal history after he testified during the guilt phase. Phillips admits the issue was not properly preserved for review and, thus, requests plain error review. Phillips, herself, called Buddy as a witness, so any evidence offered by Phillips of his prior convictions would violate the rule that a party may not impeach its own witness in either a civil or criminal case unless two requirements are met: (1) a showing of surprise at the testimony the witness gives, and (2) a showing that the testimony in effect makes the witness a witness for the other side. *See State v. Byrd,* 676 S.W.2d 494, 502 (Mo. banc 1984), *cert. denied,* 469 U.S. 1230, 105 S.Ct. 1233, 84 L.Ed.2d 370 (1985). This Court, as Phillips points out, has modified this rule in criminal proceedings to allow a party to impeach his own witness with a prior inconsistent statement without a showing of surprise and hostility. *State v. Bowman,* 741 S.W.2d 10, 13–14 (Mo. banc 1987), *cert. denied,* 488 U.S. 829, 109 S.Ct. 83, 102 L.Ed.2d 60 (1988); *see also State v. Blankenship,* 830 S.W.2d 1, 9 (Mo. banc 1992). The traditional rule, we determined, was inappropriate in view of § 491.074, RSMo 1986, which allows a prior inconsistent statement of any witness to be introduced as substantive evidence. *Bowman,* 741 S.W.2d at 13–14. We have not modified the rule, however, to allow impeachment of one's own witness in a criminal proceeding by proof of prior criminal convictions without a showing of surprise and hostility, and Phillips offers no persuasive argument to do so now. Accordingly, the trial court committed no error, plain or otherwise, in refusing to allow Phillips to impeach her own witness with evidence of his prior criminal convictions.

## D. INSUFFICIENT EVIDENCE

Phillips argues that the trial court erred in overruling her motion for acquittal at the close of the State's case in chief, because the State presented evidence insufficient to prove her guilty of the murder. In reviewing a challenge to the sufficiency of the evidence, appellate courts are limited to determining whether there is sufficient evidence from which a reasonable juror might have found the defendant guilty beyond a reasonable doubt. *State v. Dulany,* 781 S.W.2d 52, 55 (Mo. banc 1989). On review, this Court accepts as true all evidence favorable to the State, including all favorable inferences drawn from the evidence, and disregards all evidence and inference to the contrary. *Id.*

With these rules in mind, the evidence shows the following: Phillips was with Plaster on the night she was last seen alive. The day after the killing would have taken place, a car that was identified as similar to Phillips' was seen driving into Plaster's garage. Testing revealed the presence of human blood throughout Phillips' car. Phillips attempted to dispose of the murder weapon and numerous checks from Plaster's account by hiding these items under the porch of a friend's home. A knife found in Phillips' apartment was the same brand as a knife found in a discarded bag where Plaster's body parts were discovered. A check for $4,050.00 drawn on Plaster's account and made payable to Phillips was determined to

be a forgery. Given this evidence, we hold that a reasonable juror could have found Phillips guilty beyond a reasonable doubt of first degree murder.

## IV. RULE 29.15 PROCEEDINGS

■ In reviewing points on appeal from the denial of postconviction relief, we are limited to a determination of whether the findings and conclusions of the trial court are clearly erroneous. Rule 29.15(j); *State v. Tokar*, 918 S.W.2d 753, 761 (Mo. banc), *cert. denied*, —— U.S. ——, 117 S.Ct. 307, 136 L.Ed.2d 224 (1996).

### A. ADOPTION OF STATE'S PROPOSED FINDINGS

■ Phillips complains that the motion court clearly erred by adopting in whole the State's findings of fact and conclusions of law. Phillips concedes that this Court has held that it is proper for the motion court to adopt in whole or in part the findings of fact and conclusions of law drafted by one of the parties so long as the court thoughtfully and carefully considers the party's proposed findings and agrees with the content. *State v. White*, 873 S.W.2d 590, 600 (Mo. banc 1994). She insists, however, that the court in this case did not thoughtfully and carefully consider the State's proposed findings, because "several factual claims made by the State and then adopted by the court were refuted and contradicted by the record." Phillips has identified only one allegedly refuted factual finding, and a review of the record shows that the testimony at the hearing did, in fact, support the finding, although the court did identify the wrong attorney as having provided the testimony. One minor error in the court's findings, though, does not establish that the court did not carefully consider the State's proposed findings. We cannot say that the motion court did not exercise independent judgment in its adoption of the State's findings of fact and conclusions of law. This point is denied.

### A. HANDWRITING EXEMPLARS

Phillips raised several claims in her Rule 29.15 motion regarding the trial court's order that she submit handwriting samples and the trial court's admission of her refusal to do so on May 17, 1990. Specifically, she alleged that the trial court misled counsel as to what it intended to do concerning the handwriting samples and that the State committed misconduct by not taking the samples when it had the opportunity to do so. She now contends that the motion court clearly erred in denying her relief on these claims.

■ Phillips' claim that the trial court misled her arises from events that took place on January 23, 1992, and January 31, 1992. On January 23, the State filed a motion to allow evidence of Phillips' refusal to submit handwriting samples on the ground that Phillips had not yet complied with the court's order to provide handwriting samples. Phillips' refusal, according to the State, was evidence of her consciousness of guilt. The court overruled the motion without prejudice to renew. On January 31, the State renewed its motion to allow evidence of Phillips' refusal to provide a handwriting sample and supplemented the motion with an offer of proof. The court then lifted its earlier order in limine that had precluded evidence of Phillips' refusal and stated that it fully advised counsel on January 23 "of what [it] intended to do unless there was a compliance with the court's earlier order." In ruling that the refusal evidence would be allowed, the court explained that Phillips was always ordered to give the samples and that she had neither complied nor shown that the State had refused to accept her compliance. Phillips claims her attorneys were misled because, contrary to the trial court's statement on January 31, they were not fully advised on January 23 of the consequences of not supplying a handwriting sample.

The record shows that the trial court did not specifically advise Phillips' attorneys on January 23 of what it intended to do if Phillips did not comply with the earlier order to provide a handwriting sample. This is not evidence, however, that the court misled the attorneys. The attorneys were fully aware that the court was overruling the State's motion to present the refusal evidence without prejudice to renew and that the motion alleged that Phillips had not complied with the court's order. Under these circum-

stances, the attorneys should have known that the State might renew its motion and that Phillips' compliance with the court's order would be at issue, and they should also have known that in light of Phillips' failure to comply, the court could decide to allow the evidence of her refusal on May 17. The court's failure to advise the attorneys of what a future ruling might be is not a misleading on the part of the court. The motion court did not clearly err in denying Phillips' claim that her attorneys were misled.

■ Phillips' claim of prosecutorial misconduct is also without merit. She argues that the State engaged in that misconduct by failing to appear at the Greene County Jail on November 27 to obtain handwriting samples and then attempting to use her failure to submit a sample on May 17 as evidence of her guilt. On January 31, however, during arguments to support the renewed motion to admit the refusal evidence, the prosecutor informed the court that in several conversations he had with Phillips' attorneys, just before November 27, the attorneys indicated that Phillips' position to refuse to provide a handwriting sample had not changed. The State was not required to disbelieve Phillips' attorneys on this matter. The motion court did not clearly err in denying this claim.

## C. INEFFECTIVE ASSISTANCE OF COUNSEL

■ To establish that counsel's assistance was so ineffective as to require reversal of a conviction or death sentence, the movant must show that counsel's performance was deficient and that the deficiency prejudiced the defense. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). In order to prevail on a claim of ineffective assistance of counsel, the movant must satisfy both the performance prong and the prejudice prong; if the movant fails to satisfy either prong, the reviewing court need not consider the other. *Sidebottom v. State,* 781 S.W.2d 791, 796 (Mo. banc 1989). Counsel is strongly presumed to have rendered adequate assistance and to have made all significant decisions in the exercise of reasonable professional judgment. *Strickland,* 466 U.S. at 690, 104 S.Ct. at

2065–66. The movant must also overcome the presumption that the challenged action was sound trial strategy. *Id.* at 689, 104 S.Ct. at 2065. To prove prejudice, the movant must show a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* at 694, 104 S.Ct. at 2068. *See also State v. Richardson,* 923 S.W.2d 301, 326–27 (Mo. banc), *cert. denied,* —— U.S. ——, 117 S.Ct. 403, 136 L.Ed.2d 317 (1996).

### 1. HANDWRITING SAMPLES

■ Phillips claims that her counsel were ineffective in their handling of the court's order to produce handwriting samples. She alleges that she received conflicting advice from her attorneys on whether she should give a handwriting sample to the State. This conflicting advice, however, came after the events of May 17, 1990, when she first refused to submit a sample. At that time she was advised by counsel to submit a sample, but she disregarded the advice. Only the refusal of May 17–a decision that was not influenced by her attorneys–was admitted into evidence at trial. Further, Phillips does not attempt to allege that if all her attorneys had urged her to submit a sample that she would have done so, and in fact, the events of May 17 suggest otherwise. Phillips cannot show she was prejudiced by the actions of her counsel, because it was fully her initial decision to refuse to submit a handwriting sample. The motion court did not clearly err in denying this ineffective assistance of counsel claim.

### 2. BUDDY MINSTER EVIDENCE

■ Phillips argues that her counsel was ineffective for failing to investigate and present evidence during guilt phase that her son, Buddy Minster, killed and dismembered Plaster. Part of this evidence includes opinions as to Buddy's bad temper; Buddy's employment both as a butcher and in the euthanasia room of the Humane Society; Buddy's possession of scissors that he claimed could be used to dismember a body and butcher tools; Buddy's passing of a bad check; his prior alcohol and drug abuse; and his prior criminal record. These matters are

not relevant to any issue in the case, and they pertain, instead, to Buddy's character, or rather bad character.

 Other evidence, however, consists of statements made by Buddy implicating him in the crime. He allegedly said that his mother had been missing from their apartment for several days the week of the murder, that his mother was taking the fall, and that he passed a lie detector test even though he was lying. These statements, even taken at face value, do not exonerate Phillips, as they do not even suggest that she was not involved in the murder. The point is denied.

## 3. MENTAL HEALTH EVIDENCE

For her next point, Phillips argues that her trial counsel were ineffective for failing to investigate and present evidence of her mental health. At counsel's request, Phillips was examined by at least four psychologists and one sociologist before trial, and counsel also obtained medical records and other information from her treating physician. Phillips characterizes all of this information as a "wealth of mental health evidence," yet she still complains that counsel's investigation in this regard was deficient. We disagree. As the record shows, counsel did obtain several evaluations of Phillips' mental status, and she fails to make any allegations as to what investigative avenues were left untouched.

 In a related argument, Phillips contends that counsel was ineffective for failing to litigate her competency to proceed to trial, and in support, she relies on one psychologist's testimony that she could not assist her attorneys due to her mental condition. She ignores, however, the testimony of three of the other psychologists who examined her before trial, all of whom found that she was competent to stand trial. Given these opinions by the mental health experts who examined Phillips, it was not unreasonable for counsel to decline to litigate the issue of competency.

 Finally, Phillips complains that the evidence regarding her mental health should have been presented during the guilt phase of trial even if she was competent to proceed. Evidence of a defendant's mental

disease or defect is admissible during the guilt phase only if offered to show lack of responsibility for one or more elements of the crime charged, including absence of the appropriate culpable mental state. *See State v. Copeland*, 928 S.W.2d 828, 837 (Mo. banc 1996) *cert. denied*, —— U.S. ——, 117 S.Ct. 981, 136 L.Ed.2d 864 (1997); § 552.015, RSMo 1986. At least two of the psychologists who examined her before trial found that Phillips' mental problems did not exclude legal responsibility and that she knew right from wrong. In fact, Phillips does not now point to any evidence that she suffered from a mental disease or defect that would establish a lack of responsibility for the murder. Under these facts, counsel was not ineffective for rejecting a guilt-phase defense based upon mental disease or defect. The motion court did not clearly err in finding that counsel was not ineffective in the investigation and presentation of Phillips' mental health evidence.

## 4. CLOSING ARGUMENTS

Phillips raises ineffective assistance of counsel as an alternative to her claims of plain error during the guilt phase closing arguments. The substance of these arguments was discussed and rejected in Part III. Although the objection to the footprint argument was improperly preserved, Phillips was not prejudiced because the prosecutor did not misstate the evidence. Furthermore, counsel was not ineffective in failing to object to the other arguments that Phillips now claims were improper, because, as we have already determined, the arguments were permissible. The motion court did not clearly err in denying these claims.

## 5. FAILURE TO PRESERVE IMPEACHMENT EVIDENCE

 Phillips alleges that her trial counsel was ineffective for failing to preserve the issue of the impeachment of Buddy's testimony with evidence of his prior criminal convictions. We have already determined that the trial court committed no error in refusing to allow Phillips to use Buddy's prior convictions for impeachment purposes. Trial counsel cannot be found ineffective for failing to

preserve a claim that had no merit. The motion court did not clearly err in denying this claim.

## 6. FAILURE TO PRESENT EVIDENCE

Phillips raises a series of claims regarding counsel's alleged ineffectiveness during the guilt phase proceeding in the examination and presentation of witnesses.

### a. Failure to Impeach

■ Phillips complains of trial counsel's failure to impeach two witnesses. The mere failure to impeach a witness, however, does not entitle a movant to postconviction relief. *State v. Dunn*, 889 S.W.2d 65, 76 (Mo.App. 1994). Rather, movant has the burden of showing that the impeachment would have provided her with a defense or would have changed the outcome of the trial, and she must also overcome the presumption that counsel's decision not to impeach was a matter of trial strategy. *Id.*

■ The first claim is that counsel should have impeached Jean Walker's testimony that she saw a car similar to Phillips' car in the area where Plaster's body was found shortly before the body was discovered. This testimony, Phillips explains, should have been countered with Walker's prior statement that she saw two people in the car. This prior statement, we observe, is not necessarily inconsistent, but even if it was, counsel was not unreasonable to decline to use it. Co-counsel testified at the evidentiary hearing that he did not want to present the jury with the possibility that two people were acting together in Plaster's murder, because the jury might conclude that Phillips was one of those people. In this instance, Phillips has not overcome the presumption that counsel's decision not to impeach with this statement was reasonable trial strategy.

Next Phillips claims that counsel should have impeached Ethel Griep's trial testimony that she met Phillips in Branson on October 6, 1990, at close to 5:00 p.m. with Griep's prior inconsistent statement to the police that she met Phillips between 4:00 and 4:30 p.m. The prior inconsistent statement was important to Phillips' case because it placed her in Branson closer to 4:00 p.m., which was the time, according to other evidence, that the body was discarded miles away. Despite Phillips' allegations, counsel did in fact question Griep about her prior statement, and she responded that she did not remember its contents, but that her memory would have been clearer when she made the prior statement. The point is denied.

### b. Scientific Testing

■ Phillips contends that counsel was ineffective in failing to conduct independent scientific testing and in cross-examining the State's handwriting and fingerprint experts. Specifically, she claims that counsel should have obtained an independent handwriting expert to examine the $4,050 check made out to her and to examine the handwriting samples she gave to the State. To support her position, Phillips presented the testimony of August Nilges, a handwriting expert, at the Rule 29.15 hearing. Nilges testified that Plaster's signature on the $4,050 check was genuine and did not appear to have been made under stress or duress. He also testified that he examined the handwriting sample given by Phillips to the police and he detected no signs that Phillips attempted to disguise her penmanship. We do not agree, however, that Phillips was prejudiced by the failure of counsel to obtain and present this testimony at trial. Although the evidence may have rebutted the State's argument that the forged check and Phillips' disguised penmanship were evidence of guilt, in view of the other substantial evidence of Phillips' guilt, there is no reasonable probability that the outcome of the guilt phase would have been different.

■ Phillips also submits that her counsel were ineffective in cross-examining the State's forensic expert Gene Geitzen and the State's fingerprint expert Donald Hampton. She states that her counsel failed to elicit testimony from Geitzen that he had concluded that none of Phillips' shoes were consistent with the footprints he saw at Plaster's house and failed to elicit testimony from Hampton that Phillips' fingerprints were not found on Plaster's car. In view of the trial as a whole, this testimony would not have

exonerated Phillips and was certainly not outcome determinative. The point is denied.

### c. Events of October 3, 1989

■ Phillips claims that counsel was ineffective for failing to present evidence that would have cast doubt on whether she was with Plaster on the night of the murder, Tuesday, October 3, 1989. At trial, Jimmie Shelton and Linda Dorsey, both employees of the Top Rail Lounge, testified for the State that they saw Phillips and Plaster together at the Top Rail on the night of October 3. Shelton, however, had made a prior statement to the police that he saw Phillips and Plaster together on Monday, October 2. Impeaching Shelton with this statement, Phillips contends, would have changed the outcome of the trial. We disagree. Even if the jury were to believe that Shelton saw Phillips and Plaster together on October 2 rather than October 3, this fact alone would not have provided Phillips with a defense. It does not preclude the possibility that they were together on both the 2nd and the 3rd.

Phillips also argues that counsel should have elicited testimony from Dorsey during cross-examination that Phillips stayed at the Top Rail Lounge long after Plaster left and that she stayed until the band stopped playing. The record shows that counsel did elicit testimony from Dorsey during cross-examination that Plaster left at least a half hour before Phillips, so Phillips' trial counsel did essentially what she is claiming he failed to do. Counsel's cross-examination of Shelton and Dorsey was not ineffective.

■ Finally, Phillips argues that counsel was ineffective for failing to call several witnesses during guilt phase who allegedly would have testified that they saw Plaster and Phillips together on Monday, October 2, 1989. In order to show that trial counsel was ineffective for failing to present a witness, a defendant must prove that the witness could have been located through reasonable efforts, that the witness would have testified if called, and that the testimony would have provided a viable defense. *See State v. Twenter*, 818 S.W.2d 628, 639–40 (Mo. banc 1991). Testimony that Phillips and Plaster were together on Monday, Octo-

ber 2, totally fails to provide Phillips with a viable defense, because, as stated above, they might have been together on the 3rd as well. Counsel was not ineffective in failing to call these witnesses. The motion court did not clearly err in denying these claims.

### d. Examination of Georgia Justice

■ Phillips also claims that counsel was ineffective in failing to introduce Georgia Justice's identification of Buddy as the man she saw leaving the area near where the body was found in a white car on October 6, 1989, around 4:00 p.m. During the guilt phase, Justice testified that she saw a dirty-looking man with shoulder-length hair in the white car. Counsel did not ask her if Buddy was the person she saw in the car. Justice first identified Buddy as the person she saw driving the white car during her testimony at the Rule 29.15 hearing, nearly five years after the events in question. Under these circumstances, Phillips has not established that she was prejudiced by the failure to elicit the identification. Even if the identification was sufficiently reliable, Buddy's mere presence near the area where Plaster's body was disposed does not exonerate Phillips in the actual shooting of Plaster.

## V. CONCLUSION

For the above reasons, we affirm the conviction and the denial of that part of the motion for post-conviction relief as it pertains to the conviction. We reverse the denial of relief on the Rule 29.15 motion as it pertains to the penalty phase proceeding, vacate the sentence of death, and remand for new penalty phase proceedings.

All concur.