**STATE of Missouri, Respondent,**

v.

**Michael James GREGORY, Appellant.**

**No. WD 57860.**

Missouri Court of Appeals, Western District.

Feb. 6, 2001.

Motion for Rehearing and/or Transfer to Supreme Court Denied March 27, 2001.

Application to Transfer Denied May 29, 2001.

Connie Sullivan, Asst. Pros, Atty., Columbia, Philip M. Koppe, Asst. Atty. Gen., Kansas City, for respondent.

Charles S. Pullium, III, Richmond Heights, for appellant.

Before BRECKENRIDGE, P.J., and ULRICH and HOWARD, JJ.

HOWARD, Judge.

Michael J. Gregory appeals from his conviction of assault in the third degree, § 565.070.1(1) RSMo Cum.Supp.1998. Gregory's sole point on appeal is that the trial court erred in refusing to allow him to testify on direct examination about his prior convictions because the preclusion adversely affected his credibility with the jury in that his testimony was his only defense and the anticipated testimony regarding prior convictions was not intended to be used for impeachment purposes, but rather as a long accepted common law trial tactic, designed to reduce the prejudicial effect of the prosecutor bringing up the prior convictions on cross-examination.

We reverse and remand.

### Facts

On October 13, 1998, Michael Gregory was traveling on Rangeline Road in Boone County at the same time as Chris Cornelison. Around 5:00 p.m., a vehicle traveling directly in front of Cornelison's vehicle stopped in the middle of the road, blocking the vehicles behind it. The driver of the forward vehicle exited his vehicle, approached Cornelison, and struck him through the open driver side window. After a minute or two, the aggressor heard a truck located behind Cornelison's vehicle honk its horn, and got back in his vehicle. All vehicles then proceeded north on Rangeline. Cornelison turned off Rangeline and proceeded to his place of employment. Cornelison noticed that he was being followed by the vehicle driven by the aggressor and drove to his neighbor's house. At the neighbor's house, the aggressor assaulted Cornelison again through his driver side window. The neighbor, Kellen Hollis, then exited his home and yelled at the aggressor. The aggressor then left the scene. After a one-hour investigation, Michael Gregory was arrested by Columbia police for third-degree assault on Cornelison.

Gregory testified on his own behalf and admitted to being at the scene, but identified the aggressor as Donald Rybolt. Rybolt appeared as a witness called by the defense and denied being the aggressor.

During direct examination, defense counsel asked Gregory if he had any prior convictions. Gregory responded, "Yes." The prosecutor objected to the question as improper impeachment of the defense's own witness. The court sustained the objection. The following discussion then took place:

Mr. Pullium: Defense requests permission to ask him about his convictions. That's within our right to do, not—The State does not have a right to hold it out to bring it out on their cross-examination. I'm not impeaching him. We're asking about his prior convictions.

Ms. Sullivan: Your Honor, statutory and case law is real clear on this point. He doesn't have any right to impeach his own witness, and that's what prior convictions are for. That's the statute. He doesn't have any right to impeach him absent showing that he's a hostile witness or absent some sort of surprise. He's—He knows better than this. It's improper. It's inadmissible.

Mr. Pullium: Case law that is precisely on this, and the recent Western District says we have exactly that right.

Ms. Sullivan: Your Honor, that's incorrect. The case that was recently handed down from the Western District indicated that any party may impeach his own in showing that that witness is hostile and proving in—that, in fact, the person has become a witness for the other side. . . .

The Court: The Court's made a ruling. Any further record you wish to make?

Mr. Pullium: No.

\* \* \* \* \*

During cross-examination, the State elicited from Gregory that he had previously been convicted of a felony drug offense and felony assault. The State also referred to Gregory as a convicted felon during closing argument.

Michael Gregory was found guilty on July 29, 1999 of assault in the third degree, § 565.070.1(1). He was sentenced to six months in the Boone County jail. This appeal follows.

## Argument

Gregory's sole point on appeal is that the trial court erred in refusing to allow him to testify on direct examination about his prior convictions because the preclusion adversely affected his credibility with the jury in that his testimony was his only defense and the anticipated testimony regarding prior convictions was not intended to be used for impeachment purposes, but rather as a long accepted common law trial tactic, designed to reduce the prejudicial effect of the prosecutor bringing up the prior convictions on cross-examination.

■ "A trial court typically has broad discretion in deciding whether to admit evidence and, as such, its decision will not be disturbed unless a clear abuse of discretion is shown." *State v. Danikas*, 11 S.W.3d 782, 788 (Mo.App. W.D.1999). Gregory properly preserved this issue for appeal by attempting to present the testimony during direct examination.

■ Section 491.050 RSMo 1994, provides as follows:

Any person who has been convicted of a crime is, notwithstanding, a competent witness; however, any prior criminal convictions may be proved to affect his credibility in a civil or criminal case and, further, any prior pleas of guilty, pleas of nolo contendere, and findings of guilty may be proved to affect his credibility in a criminal case. Such proof may be either by the record or by his own cross-examination, upon which he must answer any question relevant to that inquiry, and the party cross-examining shall not be concluded by his answer.

Under § 491.050, when a defendant elects to testify in his own defense, the State has the absolute right to introduce prior convictions of the defendant for the purpose of impeachment. *State v. Ballew*, 811 S.W.2d 507, 508 (Mo.App. W.D.1991). However,

while § 491.050 permits reference to a defendant's prior convictions for the purpose of assessing his credibility as a witness, nothing in the statute reserves to the State the right to present such information.

This court recently addressed the issue presented in this point in *State v. Stewart*, 997 S.W.2d 36 (Mo.App. W.D.1999). In *Stewart*, the defendant argued that the trial court erred in sustaining the State's motion in limine, which prevented him from testifying on direct examination that he had prior convictions. *Stewart*, 997 S.W.2d at 39. The defendant argued that not allowing him to admit his prior convictions on direct examination deprived him of a fair trial because it adversely affected his credibility. *Id.* He claimed that he was substantially prejudiced because the State was allowed to "dramatically reveal [his] prior convictions for the first time on cross-examination." *Id.* Because the defendant made no attempt to introduce the precluded evidence at trial, he did not properly preserve his claim of error, and thus we reviewed only for plain error. *Id.*

We distinguished *State v. Phillips*, 940 S.W.2d 512 (Mo. banc 1997),[1] finding that *Phillips* did not concern the testimony of the defendant, but rather concerned a defense witness. *Id.* We found that *Phillips* merely reiterated the rule that a party may not impeach his own witness unless there is a showing of surprise at the testimony the witness gives, and a showing that the testimony in effect makes the witness a witness for the other side. *Id.* at 40. We further found as follows:

The common law of Missouri is that a defendant in a criminal case may testify on direct about his own prior criminal convictions. *See State v. Aye*, 927 S.W.2d 951, 954 (Mo.App.1996); *State v. Wilson*, 888 S.W.2d 744, 748 (Mo.App. 1994); *State v. Skelton*, 887 S.W.2d 699, 704 (Mo.App.1994); *State v. Light*, 871 S.W.2d 59, 62 (Mo.App.1994); *State v. Turner*, 655 S.W.2d 710, 711 (Mo.App. 1983). *Phillips* did not change this.

Since the ruling in *Phillips* does not prevent a criminal defendant with prior convictions from testifying about those convictions on direct examination, it was error for the trial court to sustain the State's motion in limine.

*Id.*

We found that the trial court's error in sustaining the State's motion in limine was plain, in that it affected the substantial right of the defendant to testify on his own behalf.[2] *Id.* We next considered whether the error resulted in "manifest injustice"

1. In *Phillips*, the defendant claimed that the trial court erred in sustaining the State's motion in limine to prevent her from impeaching a defense witness's credibility with his extensive criminal history after he testified during the guilt phase. *Phillips*, 940 S.W.2d at 520. The court found that because Phillips, herself, called the witness, any evidence offered by Phillips of the witness's prior convictions would violate the rule that a party may not impeach her own witness in either a civil or criminal case unless she could make a showing of surprise at the testimony the witness gives, as well as a showing that the testimony in effect makes the witness a witness for the other side. *Id.* The court noted that the rule had been modified in criminal proceedings to allow a party to impeach her own witness with a prior inconsistent statement without a showing of surprise and hostility. *Id.* The court found that the rule had not been modified, however, "to allow impeachment of one's own witness in a criminal proceeding by proof of prior criminal convictions without a showing of surprise and hostility." *Id.* Accordingly, the court held that the trial court committed no error, plain or otherwise, in refusing to allow Phillips to impeach her own witness with evidence of his prior criminal convictions. *Id.*

2. We note that in *Stewart* we reviewed for plain error, while in this case we review for abuse of discretion.

or "miscarriage of justice." *Id.* On that subject, we found as follows:

> If [defendant] had been allowed to testify as he wanted, the evidence before the jury would have been the same. The nature, dates and places of [defendant's] convictions would have been revealed. The only difference the court's error made was that the State presented the evidence first. We recognize going first and "pulling teeth" has value-that is precisely why the prosecutor filed the motion in limine. However, we will reverse under plain error only if it is established that the error had a decisive effect on the jury's verdict. We cannot say, on this record, that the error below had a decisive effect on the jury's verdict. The jurors knew about the convictions. They knew [defendant] did not have to testify but chose to do so. They knew [defendant] recognized that testifying would mean the jurors would hear about those convictions. And the jury knew, not from the State but from [defendant], that he had been on parole, that he had given seventeen urine samples but none were "dirty." This is what [defendant] wanted the jurors to know. Thus, we cannot conclude that the court's error resulted in manifest injustice.

*Id.* at 41–42. (Citation omitted.) However, we added a cautionary note. We stated that the defendant "fears that allowing his conviction to stand will invite others to repeat this mistake. However, although we find that the parties herein acted in good faith, such would not be the case should this decision be used to justify repeating the error." *Id.* at 42. We do not ignore the cautionary note. The present case was tried on July 29, 1999, and our opinion in *Stewart* was issued on May 25, 1999. Therefore, this warning applies to the present case.

■ The State contends that the trial court's ruling in this case, if error, amounted to harmless error because the ruling did not adversely affect Gregory's credibility in that the defense introduced the issue by asking the question on direct, in front of the jury, thereby diffusing the element of surprise or drama on cross-examination and demonstrating for the jury that Gregory was prepared to answer. However, the only information Gregory advanced was a "yes" as to whether he had any prior convictions. Proceedings were stopped by the State's objection followed by a discussion at the bench. Gregory was not allowed to continue and it was the State that was able to bring out the details of the crimes and mentioned it further in closing. One of those prior crimes was assault, charges similar to those in this case. It is difficult to conclude that the jury was not left with a worse taste in its mouth than if Gregory had been able to present the evidence in direct testimony.

Both Chris Cornelison and Kellen Hollis testified that Gregory was the perpetrator in this case. Gregory's defense depended on his credibility in testifying that he was present in the perpetrator's car, but that he was not the perpetrator. In light of this, and taking into account the cautionary note in *Stewart,* we are not inclined to give the State the benefit of the doubt. We hold that Gregory's conviction must be reversed, and the cause remanded for a new trial.

■ We have some concern that the cases relied on in *Stewart* do not support the finding in that case that the common law of Missouri gives a defendant the right to testify on direct examination about his own prior criminal convictions. However, the conclusion in *Stewart* that the trial court committed error was correct. The rationale behind the rule preventing impeachment of one's own witness does not

logically apply to the revelation of a defendant's prior convictions on direct examination. The rationale behind the rule preventing impeachment of one's own witness is summarized in Missouri Evidence Restated, § 607 (MoBar 3d ed.1996), as follows:

> Missouri had long followed the rule that a party could not impeach one's own witness until after establishing having been surprised by harmful testimony of that witness. *State v. Kinne*, 372 S.W.2d 62, 67–70 (Mo.1963); *see also Wells v. Goforth*, 443 S.W.2d 155 (Mo. banc 1969) (initiated exception to existing rule to permit impeachment of adverse party witness). The "traditional reason" for the rule was that, in calling a witness, a party thereby vouched for the credibility of the witness. A second rationale was that "the party (calling the witness) ought not to have the means to coerce his witness' [sic] into testifying as he desires because he has the power to injure him as a witness if he testifies unfavorably...." *Kinne*, 372 S.W.2d at 67 (quoting 3 John H. Wigmore, Wigmore on Evidence § 899 (3d ed.1940)). A third rationale concerned the fear of opening the floodgates for the admission of hearsay testimony serving as substantive evidence should parties be permitted to impeach their own witnesses. *Kinne*, 372 S.W.2d at 67; *see* Comment, *Impeaching One's Own Witness in Missouri*, 37 Mo. L.Rev. 507 (1972).

None of these rationales for the rule apply to the defendant revealing his prior convictions on direct examination. This practice is not "impeachment," per se, but rather "anticipatory rehabilitation" designed to " 'take the wind out of the sails' of an attack on credibility or to 'soften the blow' of anticipated inquiries or revelations expected to be damaging to the credibility" of the defendant. *Lawhorne v. State*, 500 So.2d 519, 520 (Fla.1986).

Other jurisdictions have also held that "defense counsel in a criminal case is not precluded from 'drawing the sting' by asking the defendant on direct examination whether he had a prior felony conviction." 81 Am.Jur.2d Witnesses § 983 (1992), citing *State v. Pearce*, 22 Ariz.App. 338, 527 P.2d 297 (1974); and *State v. Hedgepeth*, 66 N.C.App. 390, 310 S.E.2d 920 (1984), *disagreed with on other grounds in State v. Outlaw*, 94 N.C.App. 491, 380 S.E.2d 531 (1989). In *Hedgepeth*, 310 S.E.2d at 925, the North Carolina Court of Appeals addressed the issue of whether the trial court erred in refusing to allow the defendant's counsel to ask the defendant on direct examination about his prior criminal convictions. The court held as follows:

> Ordinarily, when a defendant is not permitted to testify on direct examination regarding his prior criminal record and the prior record is elicited during cross-examination, the defendant sustains a double blow to his credibility-aside from the obvious effect of the prior conviction, defendant's credibility is hurt because the jury is left with the impression that the defendant tried to hide his criminal record and was not being entirely truthful. Allowing the defendant to testify on direct examination, rather than detracting from his credibility, may actually bolster his credibility because the jury may believe that the defendant is being completely open and straightforward and worthy of belief. Defendant's counsel surely was not attempting in the present case to attack defendant's veracity as a witness. Consequently, he should not be accused technically of impeaching his own witness....
>
> Since defendant was virtually assured of being cross-examined about his prior record, defendant's counsel should have been allowed to question defendant on direct examination regarding his crimi-

nal record in order to enhance his credibility. Defendant had everything to gain and nothing to lose.

*Hedgepeth,* 310 S.E.2d at 925.

Similarly, in *McKinney v. State,* 722 S.W.2d 506 (Tex.Ct.App.1986), the appellant contended that the trial court committed reversible error by refusing to allow him to testify on direct examination about his prior felony convictions. The Texas Court of Appeals agreed, finding that "[t]here is no good reason to deny a defendant the right to testify on direct examination about his prior offenses." *McKinney,* 722 S.W.2d at 507. The court went on to explain that "when [the] witness is the defendant, the intent is not to discredit the defendant's testimony, but to make an anticipatory disclosure of the prior convictions in order to reduce the prejudicial effect of such evidence on his credibility." *Id.* The court reversed the appellant's conviction, finding that "defendant's testimony constituted his only defense. Therefore, his credibility was crucial." *Id.*

■ Considering the rationale behind the rule preventing impeachment of one's own witness, and the importance of Gregory's credibility in front of the jury, we cannot say that the court's error in not allowing Gregory to testify about his prior convictions on direct examination was harmless.

The judgment of the trial court is reversed and the cause is remanded for a new trial.

BRECKENRIDGE, P.J., and ULRICH, J., concur.